**NORTHWESTERN PUBLIC SERVICE COMPANY, Petitioner,**

**v.**

**FEDERAL POWER COMMISSION, Respondent,**

**Kansas-Nebraska Natural Gas Company, Inc., Intervenor.**

**No. 73–2237.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 10, 1975.

Decided Oct. 2, 1975.

Rehearing and Rehearing En Banc Denied Nov. 6, 1975.

two orders of the Federal Power Commission (FPC) conditionally authorizing Kansas-Nebraska Natural Gas Company, Inc. (Kansas-Nebraska) to provide Winter Period Service (WPS) to its jurisdictional customers and denying Northwestern's application for rehearing. *Kansas-Nebraska Natural Gas Co., Inc.*, 50 F.P.C. 570, *rehearing denied* 50 F.P.C. 1280 (1973). We hold that Northwestern is not aggrieved by these orders and therefore lacks standing to petition for review.

## I.

Northwestern owns and operates a natural gas distribution system serving retail customers in Grand Island, Kearney and North Platte, Nebraska. Northwestern buys all its gas for these customers from Kansas-Nebraska. Kansas-Nebraska supplied Northwestern with gas on a firm commitment basis in accordance with two rate schedules: a Contract Demand (CD) schedule, under which a seasonally-adjusted maximum volume of gas is supplied throughout the year; and a WPS schedule, under which gas is supplied through the winter months only. Kansas-Nebraska's authority to supply gas under WPS is the subject of the present dispute.

Kansas-Nebraska first introduced WPS on February 23, 1973, when it applied to the FPC pursuant to section 7(c) of the Natural Gas Act (Act), 15 U.S.C. § 717f(c) (1970), for a certificate of public convenience and necessity to provide the new service to its jurisdictional customers. In its WPS application, as amended, Kansas-Nebraska proposed to offer additional gas on a firm commitment basis for the limited period from November 1 through the following March 31 to any of its customers purchasing gas under its year-round CD service. Kansas-Nebraska explained its application as follows:

> Applicant considers it prudent to restrict the growth of its sales and its customers' sales to large industrial

Sheldon A. Zabel, Chicago, Ill., with whom James F. Van Vliet, Chicago, Ill., was on the brief for petitioner.

Arthur E. Gowran, Atty., F. P. C., with whom Leo E. Forquer, Gen. Counsel, and George W. McHenry, Jr., Sol., F. P. C., were on the brief for respondent.

John P. Furman, Washington, D. C., was on the brief for intervenor.

Before TAMM and ROBB, Circuit Judges, and GEORGE L. HART,* Chief Judge, United States District Court for the District of Columbia.

ROBB, Circuit Judge:

Northwestern Public Service Company (Northwestern) petitions for review of

plants, particularly those using gas as boiler fuel. For that reason it has adopted a policy of not offering to increase contract demands under its CD rate schedules which are for year-round service. Increasing contract demands under the CD rate schedules would make additional gas available throughout the year and permit the distributors to make additional off-peak sales from the additional valley gas. Applicant believes it desirable and prudent, to the extent that available gas supplies will permit, to permit increases in sales for residential and small commercial customers, the requirements of such customers being mostly for space heating. . . . Applicant believes that a better solution to this problem is the WPS rate which it is proposing to offer to all jurisdictional customers.

Kansas-Nebraska requested the FPC to rule on its application on the basis of the pleadings filed and without holding a full hearing, as provided in 18 C.F.R. § 1.32(b).

Without requesting a hearing, Northwestern filed a petition to intervene in Kansas-Nebraska's application. Later, Northwestern amended its petition to include a request for a full evidentiary hearing on five issues: (1) whether WPS was a necessary and appropriate conservation measure; (2) whether a seasonal service like WPS was appropriately designed for Northwestern and other similarly situated Kansas-Nebraska customers whose CD service was already seasonally-adjusted;[1] (3) whether WPS was proper without restrictions on Kansas-Nebraska's non-jurisdictional sale of conserved gas; (4) whether the absence of such restrictions created an undue preference or advantage in favor of non-jurisdictional customers prohibited by section 4(b) of the Act, 15 U.S.C. § 717c(b) (1970); and (5) whether the rates Kansas-Nebraska proposed for WPS were appropriate.

In an answer to Northwestern's amended petition to intervene Kansas-Nebraska responded to each issue on which Northwestern had requested a full hearing. As to whether WPS was a necessary and appropriate conservation measure, Kansas-Nebraska answered that it was not a conservation measure at all but rather a means of affording its jurisdictional customers relief from the conservation resulting from Kansas-Nebraska's decision not to increase the volume of gas available under its CD service. The issue of the appropriateness of a new seasonal service for Northwestern, Kansas-Nebraska argued, was properly a part of the FPC's review of Kansas-Nebraska's entire tariff structure in a separate proceeding.[2] As for Northwestern's

---

1. At the time of these proceedings Kansas-Nebraska's tariff structure consisted of two geographical zones. In Zone 1 billing demand, or the volume of gas actually supplied to a customer, was 100% of contract demand, the maximum volume of gas contracted for. In Zone 2, in which Northwestern was located, billing demand was seasonally adjusted: from November thru March it was 100% of contract demand; in April, May, September and October it was 80% of contract demand; and in June, July and August it was 60% of contract demand. Thus, even under year-round CD service Northwestern was supplied with greater volumes of gas during seasons when high priority residential use was expected to increase and smaller volumes in the summer when high priority residential use was expected to decrease. The issue on which Northwestern requested a hearing in this proceeding was whether grafting a new seasonal service onto an already existing seasonal service was appropriate.

2. The FPC reviewed Kansas-Nebraska's entire rate structure in Docket No. RP 72–32. In Opinion No. 731, issued May 15, 1975, the FPC found Kansas-Nebraska's zone rate differentials to be unreasonable and inequitable. However, the FPC approved the seasonal variations in the Zone 2 structure. See note 1 *supra.* The FPC held that the Zone 2 structure helped prevent excessive sales of natural gas to low priority industrial users and thus served the public interest in conserving rapidly diminishing gas reserves.

Both the issue of the zone rate differential and the issue of the seasonal structure of Zone 2 are presently involved in Docket No. RP 74–11 pending decision before the FPC. The decisions of the FPC on these issues in Opinion No. 731 are subject to change in the proceedings in Docket No. RP 74–11.

concern that Kansas-Nebraska might sell conserved gas to low priority non-jurisdictional customers and thereby violate section 4(b) of the Act, 15 U.S.C. § 717c(b) (1970), Kansas-Nebraska noted that the FPC lacked jurisdiction to restrict non-jurisdictional sales, and that relief from any violation of section 4(b) was available under section 5(a) of the Act, 15 U.S.C. § 717d(a) (1970). Finally, Kansas-Nebraska claimed the right to fix the initial rates for its new WPS consistent with public convenience and necessity, citing *Atlantic Refining Co. v. Public Service Commission of N. Y.,* 360 U.S. 378, 391–393, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959).

On August 28, 1973, after all interested persons had had an opportunity to present their views to the FPC in writing, the FPC issued its "Findings and Order after Statutory Hearing". 50 F.P.C. 570 (1973). The FPC stated that it held a hearing on August 24, 1973, at which, on its own motion, it received in evidence all the pleadings filed in the docket. The FPC granted all petitions to intervene, including Northwestern's, and after reviewing all issues raised by the parties, concluded that no further hearing was required. Accordingly, the FPC ordered that a certificate of public convenience and necessity be issued to Kansas-Nebraska, authorizing it to provide WPS in accordance with its application, subject to the following condition:

> (C) The authorization hereinabove granted is conditioned upon Applicant's filing for appropriate certificate authorization for the sale of the increased quantities of natural gas resulting from the new Winter Period Service and upon Applicant's showing the allocation and specific uses of said gas.

50 F.P.C. at 573.

Northwestern applied for rehearing, alleging, among other things, that the FPC had wrongfully denied it a full hearing and that the decision was not based upon substantial evidence. On October 26, 1973, the FPC denied rehearing. 50 F.P.C. 1280 (1973). Thereafter, Northwestern petitioned for review of the FPC's orders in this court.

## II.

The threshold question, and here the dispositive one, is whether Northwestern has standing to petition for review of the FPC's orders. Under section 19(b) of the Act, 15 U.S.C. § 717r(b) (1970), for Northwestern to have standing to obtain review of an FPC order it must be "aggrieved" by such order.[3] Whether a party is aggrieved within the meaning of section 19(b) and similar statutes is not controlled by any general rule but must be determined on the basis of the specific facts in each case. *United States ex rel. Chapman v. FPC,* 345 U.S. 153, 156, 73 S.Ct. 609, 97 L.Ed. 918 (1953). However, the Supreme Court has provided some general guidance for resolving standing questions in appeals from administrative decisions. The Court has held that under section 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702 (1970), a person has standing to obtain judicial review of federal agency action if he has suffered " 'injury in fact' " to an interest " 'arguably within the zone of interests to be protected or regulated' " by the agency under the applicable statute. *Sierra Club v. Morton,* 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972), *citing Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), *and Barlow v. Collins,* 397 U.S. 159, 163–164, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). The language of section 10(a) of the Administrative Procedure Act is similar to the language of

---

**3.** Section 19(b) of the Act, 15 U.S.C. § 717r(b) (1970), provides in pertinent part:

> Any ₁party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order . . . in the United States Court of Appeals for the District of Columbia . . . .

section 19(b) of the Natural Gas Act.[4] In fact, in determining standing under section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b) (1970), the language of which is identical to the language of section 19(b) of the Natural Gas Act,[5] this court noted the similarity and applied the test enunciated by the Supreme Court. *Chemehuevi Tribe of Indians v. FPC,* 160 U.S.App.D.C. 83, 88 n.12, 489 F.2d 1207, 1212 n.12 (1973), *rev'd on other grounds,* 420 U.S. 395, 95 S.Ct. 1066, 43 L.Ed.2d 279 (1975). *City of Lafayette v. SEC,* 147 U.S.App.D.C. 98, 104–105, 454 F.2d 941, 947–948, *aff'd sub nom. Gulf States Utilities Co. v. FPC,* 411 U.S. 747, 93 S.Ct. 1870, 36 L.Ed.2d 635 (1973). We think the same test should apply under the Natural Gas Act. Accordingly, we conclude that a party is aggrieved within the meaning of section 19(b) of the Natural Gas Act if as a result of an order of the FPC it has sustained "injury in fact" to an interest "arguably within the zone of interests to be protected or regulated" by the FPC under the Act.[6]

In applying this test to the facts of this case, it is important at the outset to emphasize what is not involved here. This case does not involve the validity of Kansas-Nebraska's tariffs. Kansas-Nebraska's rate schedules are being reviewed in FPC Docket No. RP 72–32, and its general tariff structure and the possibility of section 4(b) violations are being reviewed in FPC Docket No. RP 74–11. Neither proceeding has been concluded. Moreover, this case does not involve Kansas-Nebraska's decision not to increase the volume of gas supplied under its CD service. That decision has already received FPC approval in a separate proceeding. *Northwestern Public Service Co. v. Kansas-Nebraska Natural Gas Co., Inc.,* —— F.P.C. —— (Docket No. RP 74–1, April 8, 1974), *rehearing denied,* —— F.P.C. —— (June 4, 1974) (affirming initial decision of Administrative Law Judge). Northwestern has filed a separate petition for review of the FPC's orders in that proceeding. *Northwestern Public Service Co. v. FPC,* No. 74–1725 (D.C.Cir., filed July 15, 1974). Finally, this proceeding does not involve the allocation of one single cubic foot of natural gas. The FPC issued the certificate in question subject to the express condition that actual sales of gas under WPS receive additional approval. On December 4, 1973 the FPC approved Kansas-Nebraska's proposal to supply six of its customers with a total of 5,484 mcf of gas under WPS, including 1,000 mcf to Northwestern. *Kansas-Nebraska Natural Gas Co., Inc.,* 50 F.P.C. 1779 (1973). Northwestern does not challenge this order.

This case involves only Kansas-Nebraska's right to offer a new WPS to its jurisdictional customers. Nevertheless, Northwestern argues that it is aggrieved by the FPC's orders for three reasons.

■ First, Northwestern argues that the FPC's orders marked the end of pro-

---

4. Section 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702 (1970), provides:

    A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

5. Section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b) (1970), provides in pertinent part:

    Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain review of such order . . . in the United States Court of Appeals for the District of Columbia . . . ..

6. In *Cincinnati Gas & Electric Co. v. FPC,* 101 U.S.App.D.C. 1, 7, 246 F.2d 688, 694 (1957), this court held that section 19(b) means "that a petitioner's aggrievement must be present and immediate, or at least must be demonstrably a looming unavoidable threat." The test announced in that case is equivalent to the test later announced by the Supreme Court in *Sierra Club, Data Processing* and *Barlow.* We follow the spirit of the *Cincinnati Gas* case but adopt the later language of the Supreme Court.

ceedings relating to WPS under section 7 of the Act, 15 U.S.C. § 717f (1970), and that further attack on the terms of WPS would have to be initiated in a proceeding under section 5(a) of the Act, 15 U.S.C. § 717d(a) (1970), in which the burden of proof would shift from Kansas-Nebraska to the complainant. But the mere shifting of the burden of proof that results from the termination of section 7 proceedings cannot, without more, constitute aggrievement. If it did, a party to a section 7 proceeding would always be entitled to obtain judicial review. To constitute aggrievement, a shifting of the burden of proof must be unlawful, and in this case it was not.

■ The FPC was not required in this section 7 proceeding to find that the rates proposed by Kansas-Nebraska for WPS were just and reasonable. *Atlantic Refining Co. v. Public Service Commission of N. Y.*, 360 U.S. 378, 388–392, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959); *FPC v. Hunt*, 376 U.S. 515, 521 (1964). The FPC has discretion to defer full consideration of WPS rates for a separate proceeding under sections 4 and 5 of the Act. *Florida Economic Advisory Council v. FPC*, 102 U.S.App.D.C. 152, 155, 251 F.2d 643, 646 (1957), *cert. denied*, 356 U.S. 959, 78 S.Ct. 996, 2 L.Ed.2d 1066 (1958). The FPC was only required to find that WPS as a whole, including the proposed rates and other terms, was required by the public convenience and necessity. As Northwestern stated in its application for rehearing, "The question in this case is not whether the rates for WPS are in the public convenience and necessity, but whether WPS is." The FPC concluded that it was. Any resulting shift in the burden of proof as to the lawfulness of the terms of WPS does not constitute aggrievement that confers standing on Northwestern.

■ Second, Northwestern argues that the FPC's approval of WPS, and the higher per unit cost of gas under WPS, when coupled with Kansas-Nebraska's refusal to increase CD service, result in immediate economic injury to Northwestern. This argument is not persuasive. The FPC's approval of WPS does not itself result in economic injury to Northwestern, since Northwestern may or may not choose to avail itself of the new service. The sole source of possible economic harm to Northwestern is Kansas-Nebraska's decision not to increase CD service, and as previously noted, that decision is not a part of this case. The approval of WPS does not involve approval of Kansas-Nebraska's decision not to increase CD service, does not result in economic injury, and does not constitute aggrievement.

Finally, Northwestern argues that the FPC's approval of WPS will result in restrictions in the growth of Northwestern's market. Again, it is Kansas-Nebraska's decision not to increase CD service, and not the FPC's approval of WPS, which may result in restrictions on Northwestern's market growth. Since that decision is not involved in this proceeding, it cannot constitute aggrievement.

Northwestern has not supplied us with a basis for holding that it is aggrieved by the FPC's orders, and we are unable to find any. We therefore hold that Northwestern is not aggrieved by the FPC's orders within the meaning of section 19(b) of the Act and therefore it lacks standing to petition for review. Accordingly, the petition must be dismissed.

*Dismissed.*