982 F.2d 556
 299 U.S.App.D.C. 168, 138 P.U.R.4th 619,
Util. L. Rep. P 13,910,
23 Envtl. L. Rep. 20,606
 Judith B. MOREAU, N. Robert Moreau, Clara Lawrence, and
Walter Lawrence, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
The Providence Gas Company, Tennessee Gas Pipeline Company,
Intervenors.
 No. 91-1542.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 10, 1992.
Decided Jan. 15, 1993.
 
 [299 U.S.App.D.C. 170] Petition for Review of an Order of the Federal Energy Regulatory Commission.
 Morton L. Simons, with whom Barbara M. Simons was on the brief, for petitioners.
 Timm L. Abendroth, Atty., Federal Energy Regulatory Commission, with whom William S. Scherman, Gen. Counsel, Jerome M. Feit, Sol., and Joseph S. Davies, Deputy Sol., Federal Energy Regulatory Commission, were on the brief, for respondent.
 Robert W. Baker and Joseph P. Stevens were on the joint brief for intervenors Tennessee Gas Pipeline Co. and Providence Gas Co. Cheryl L. Jones and Barbara K. Heffernan also entered appearances for intervenor Providence Gas Co.
 Before WILLIAMS, SENTELLE and RANDOLPH, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SENTELLE.
 SENTELLE, Circuit Judge:
 
 
 1
 In this case, the Federal Energy Regulatory Commission ("FERC" or "Commission") granted Tennessee Gas Pipeline Company ("TN Gas") a certificate of public convenience and necessity to construct a natural gas pipeline from TN Gas's Massachusetts mainline to Providence Gas Company's ("Providence Gas") proposed Rhode Island interconnection. Petitioners, Judith B. Moreau, N. Robert Moreau, Clara Lawrence [299 U.S.App.D.C. 171] and Walter Lawrence, who own property adjacent to the now-completed pipeline, here challenge FERC's grant of the certificate on both substantive and procedural grounds. We dismiss two of petitioners' claims on jurisdictional grounds and one on ripeness grounds. As to the remaining claims, we deny the petition for review and remand the case to FERC for eventual resolution of the unripe claims.
 
 I.
 
 2
 A. Events Preceding FERC's Grant of a Certificate of Public Convenience and Necessity
 
 
 3
 In November 1986, TN Gas, an interstate pipeline operator, filed an application with FERC for a certificate of public convenience and necessity to construct and operate a natural gas pipeline and a metering station. TN Gas needed the pipeline extension in order to provide gas to Providence Gas, a local distribution company whose projected need for gas would soon exceed its current supply, and could not construct or operate it without a certificate. 15 U.S.C. § 717f(c)(1)(A) (1988). The proposed route for the new pipeline extended north of petitioners' land in Cranston, Rhode Island.[1] FERC published a notice of the TN Gas application in the Federal Register on December 8, 1986. That notice apprised the public that the proposed pipeline would be approximately thirty-six miles long, connecting TN Gas's existing pipeline in "Worcester County, Massachusetts to [Providence Gas's proposed pipeline in] Cranston, Rhode Island." Notice of Application, 51 Fed.Reg. 44,118, 44,120 (1986). It also informed interested parties that an attendant metering station was to be built "at Cranston, Rhode Island" and that they could oppose TN Gas's application by intervening in the FERC proceeding or filing a protest on or before December 23, 1986. Id. at 44,120-21.
 
 
 4
 On March 13, 1987, FERC issued a "Notice of Intent to Prepare an Environmental Assessment" and a request for comments on the propriety of the proposed route and on the project's environmental impact. FERC mailed the notice and request for comments to all parties that had intervened in the proceedings as of that date and to federal, state and local environmental agencies. It also published the notice in the Federal Register. See 52 Fed.Reg. 8,510 (1987). Sometime later that year, TN Gas began considering alternative routes for the pipeline, one of which would traverse petitioners' properties and would require the placement of a metering station in the southeast corner of the Moreau property. In May 1988, TN Gas formally proposed that route to FERC by filing a map specifically identifying petitioners' properties and the route across it.
 
 
 5
 In the interim, on November 30 and December 17, 1987, TN Gas contacted petitioners to see if they could negotiate the acquisition of an easement across their properties for the pipeline and some property from the Moreaus for the metering station. Petitioners refused to grant either. The Moreaus also informed TN Gas that their property, the historic Thomas Baker Farm, dated back to the pre-Revolutionary War era and was therefore entitled to protection under the National Historic Preservation Act, 16 U.S.C. § 470 et seq. (1988). On these occasions and subsequent meetings in 1988, petitioners refused to sell and proposed alternate routes.
 
 
 6
 FERC issued an "Environmental Assessment of the Providence Project" ("EA") and a request for comments thereon on November 15, 1988. Although it mailed the EA to 179 parties and state and local agencies in Rhode Island, FERC did not publish the EA or notice thereof in the Federal Register and did not serve either upon petitioners, who still were not parties to the proceedings. In the EA, FERC concluded, contrary to the Environmental Protection Agency's ("EPA") recommendation, that with specified mitigation measures, the pipeline project would not constitute a "major Federal action significantly affecting the quality of the human environment." Providence Project Environmental Assessment [299 U.S.App.D.C. 172] t 50 (Nov. 1988). Under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq. (1988), that conclusion allowed FERC to avoid having to prepare an environmental impact statement ("EIS"). See 42 U.S.C. § 4332(2)(C). Shortly thereafter, on January 19, 1989, FERC published another notice in the Federal Register, which reflected changes in the sales service to Providence Gas. See Notice of Amendment to Application, 54 Fed.Reg. 2,202 (1989).
 
 
 7
 B. Adjudicative Proceedings Before FERC and Events Leading Up to the Order Under Review
 
 
 8
 At the close of the comment period, FERC considered the comments that had been filed regarding the EA. On May 18, 1989, FERC denied requests for a formal evidentiary hearing, on the ground that the record presented no disputed issues of material fact, and issued TN Gas a certificate of public convenience and necessity pursuant to the Natural Gas Act ("NGA"), 15 U.S.C. § 717f(e) (1988). Tennessee Gas Pipeline Co., 47 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,227 (1989). The certificate, however, was conditioned on TN Gas's satisfaction of twelve enumerated criteria, id. at 61,799-800, two of which are relevant here. Condition "A," inter alia, required TN Gas to "adhere to the proposed route" as reported to FERC in several enumerated submissions, id., not including the May 16, 1988 submission, in which TN Gas formally proposed the route cutting through petitioners' property. In January 1990, TN Gas filed a motion asking FERC to include the May 16, 1988 submission in Condition "A," but FERC has yet to rule on the motion. Condition "L" barred TN Gas from commencing construction until it received written permission to do so from the Director of FERC's Office of Pipeline and Producer Regulation ("OPPR"). Id. at 61,800. FERC ordered the OPPR Director not to issue such a letter until he had reviewed and approved cultural resource and mitigation plans and had reviewed comments on the project from the Rhode Island State Historic Preservation Officer ("RISHPO") and the Advisory Council on Historic Preservation. Id.
 
 
 9
 Two months later, in July 1989, the Lawrences inquired as to the status of the FERC proceedings. FERC answered their inquiry in August by advising them of the conditional grant of the certificate of public convenience and necessity and by providing them with a copy of the EA. In November 1989, TN Gas sent the Moreaus and the Lawrences copies of the order approving its application for a certificate of public convenience and necessity. Having received and notified petitioners of the conditional certificate of public convenience and necessity, TN Gas filed a condemnation suit under 15 U.S.C. § 717f(h) (1988) in the United States District Court for the District of Rhode Island against petitioners and other neighboring landowners in December 1989. That suit ultimately proved successful. See Tennessee Gas Pipeline Co. v. 104 Acres of Land, 749 F.Supp. 427 (D.R.I.1990) (condemning the property TN Gas sought), appeal dismissed, No. 90-2216 (1st Cir. July 18, 1991).
 
 
 10
 On January 22, 1990, one month after TN Gas filed the condemnation suit, petitioners finally sought leave to intervene in the FERC proceedings. In that motion, they also moved for rehearing of the May 18, 1989 order, arguing that the route then under consideration, which traversed their property, should be abandoned in favor of specified routes that purportedly were environmentally superior. Although their intervention motion was considerably late, FERC granted it on September 29, 1990 and issued an order addressing petitioners' concerns. Tennessee Gas Pipeline Co., 52 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,290 (1990).
 
 
 11
 Relying on a "Supplemental Environmental Assessment" which it had ordered its staff to prepare after receiving petitioners' motion, FERC sua sponte ordered that the pipeline be routed around the Lawrences' property. Id. That re-routing was to be accomplished, however, by almost doubling the length of the pipeline on the Moreau property. The new route, called the "certificated route realignment alternative" [299 U.S.App.D.C. 173] ("CRRA"), would utilize an existing water pipeline right-of-way, thereby avoiding a spring and reducing the amount of the Moreaus' land that would have to be cleared of vegetation. FERC concluded that the new route "is the best resolution of the concerns raised by the concerned landowners" as it "avoids bisecting the Lawrences' property and reduces the potential for adverse impact on the Moreaus' property, without transferring substantial additional impact on other residences or landowners." Id. at 62,151. Still unhappy with the planned route, petitioners moved for a stay of the September 1990 order, which FERC denied, and for a rehearing of the stay denial, which FERC also denied. Tennessee Gas Pipeline Co., 54 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,244 (1991). FERC did, however, grant petitioners' motion for a rehearing on the merits of the September 29, 1990 order and issued the order presently under review on November 8, 1991.
 
 
 12
 Shortly before that, TN Gas had received the cultural survey on which FERC had conditioned the certificate of public convenience and necessity. That survey corroborated the Moreaus' claims that their farm was eligible for protection under the National Historic Preservation Act, 16 U.S.C. § 470 et seq. TN Gas therefore moved, on July 8, 1991, for yet another route change. Instead of crossing the Moreau property, the new route would run adjacent to it down a public right-of-way, Natick Road, still without crossing the Lawrences' property. The metering station, which TN Gas had previously planned to build and operate on a part of the Moreau property, would be moved to a property north of the Moreau farm. Anxious to begin construction, TN Gas transferred the metering station and the Natick Road portion of the pipeline from its leg of the project to that of Providence Gas. Concluding that the pipeline project, as re-routed, would not adversely affect neighboring property, the OPPR Director gave TN Gas written permission to start construction of the pipeline, subject to a condition (which is not relevant here) that the RISHPO recommended. This Court denied petitioners' emergency stay motion on December 20, 1991, and TN Gas began construction immediately thereafter.
 
 C. The FERC Order Under Review
 
 13
 Entertaining petitioners' motion for a rehearing of the September 1990 order, FERC, on November 8, 1991, rejected the claims petitioners now bring before this Court. Tennessee Gas Pipeline Co., 57 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,187 (1991). Specifically, it held that petitioners were not entitled to personal notice of the proceedings on TN Gas's application for a certificate of public convenience and necessity. Id. at 61,650. FERC also rejected petitioners' argument that it should have prepared an EIS, as opposed to an environmental assessment, for the pipeline project, concluding that with the specified mitigation measures the project "would have no significant environmental impact." Id. Additionally, FERC held that the NGA and implementing regulations did not require it to conduct a trial-type hearing because the paper record was sufficient to allow FERC to make the required inquiries. Id. at 61,650-51. Lastly, FERC approved TN Gas's most recent re-routing of the pipeline, dismissing petitioners' contentions that the routes they identified in their petition for late intervention were superior to the CRRA. Id. at 61,651.
 
 
 14
 D. Events Subsequent to the FERC Order Under Review
 
 
 15
 While TN Gas constructed its part of the pipeline project, Providence Gas had applied for the state and local permits needed to complete its portion of the pipeline, which now included the pipeline along Natick Road and the metering station. The Rhode Island Department of Environmental Management ("RIDEM") disapproved a portion of the proposed route for the Providence Gas pipeline, so Providence Gas proposed an alternate route that satisfied RIDEM's concerns. By letter-order dated June 3, 1992, the OPPR Director approved the route change and informed the gas companies that Providence Gas's proposed construction would comport with conditions FERC placed on TN Gas's certificate of [299 U.S.App.D.C. 174] public convenience and necessity. Petitioners moved for a rehearing of that letter-order on June 16, 1992; FERC granted petitioners' motion on July 17, 1992 "for the limited purpose of further consideration." J.A. at 143. FERC has not yet ruled on the merits of petitioners' challenge to the letter-order.
 
 
 16
 Sometime later, RIDEM discovered that, contrary to TN Gas's prior representation, TN Gas's leg of the pipeline traversed a wetland. On July 15, 1992, RIDEM suspended the permit it had previously issued TN Gas for that portion of the pipeline. As a result of RIDEM's action, TN Gas no longer satisfied one of the conditions on which FERC granted the certificate of public convenience and necessity, namely that TN Gas obtain all necessary state and local permits. Petitioners seized on that development on July 21, 1992, by filing a motion to vacate or suspend FERC's authorization for TN Gas to construct its part of the pipeline. Both TN Gas and Providence Gas have opposed that motion, which remains pending before FERC. In the meantime, both legs of the pipeline have been completed and are currently in operation. Petitioners now seek review in this Court.
 
 II.
 
 17
 Petitioners argue that the order below should be vacated for a variety of substantive and procedural reasons. Substantively, petitioners argue that FERC's pipeline route selection was arbitrary and without substantial evidentiary support, as was FERC's conclusion that the pipeline project would have no significant environmental impact. They also contend that FERC should not have authorized TN Gas and Providence Gas to begin construction of the pipeline. Procedurally, they claim that FERC's failure to hold an evidentiary hearing on TN Gas's application for a certificate of public convenience and necessity and to notify them personally when it became possible that the pipeline would be routed across or close to their property violated the NGA. Petitioners further contend that the failure to give them personal notice violated the Due Process Clause.
 
 
 18
 Before we may reach the merits of these claims, however, we must decide several important threshold issues. TN Gas and Providence Gas (collectively, "respondent-intervenors") assert that we lack jurisdiction to review some of petitioners' claims. Also, respondent-intervenors, joined by FERC (collectively, "respondents"), raise two challenges to the justiciability of petitioners' claims. First, they contend that petitioners lack standing to challenge FERC's actions in reviewing and approving the pipeline project. Second, and alternatively, respondents argue that some of petitioners' claims are not presently ripe for judicial review. We address each of these contentions in turn below.
 
 A. Jurisdiction
 
 19
 Respondent-intervenors (but not FERC) argue that this Court lacks jurisdiction to hear petitioners' challenge to FERC's use of an environmental assessment, rather than an EIS, because petitioners' motion for a rehearing on that ground was untimely. Because petitioners admittedly had actual notice of FERC's use of an environmental assessment by November 1989 when both FERC and TN Gas had sent them copies of the EA and the order granting the certificate, yet unexplainedly waited until January of the following year to intervene, respondent-intervenors submit that there are no "reasonable grounds" for petitioners' failure to raise the issue in timely fashion. Therefore, they conclude that we lack jurisdiction over petitioners' claim that FERC erred by not preparing an EIS. We agree.
 
 
 20
 The NGA provides that "[n]o objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do." 15 U.S.C. § 717r(b) (1988). It also provides that "[n]o proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon." 15 U.S.C. § 717r(a). As we have held, both of these [299 U.S.App.D.C. 175] requirements are "jurisdictional prerequisite[s] to judicial review." Public Serv. Comm'n v. Federal Power Comm'n, 543 F.2d 757, 774 n. 116 (D.C.Cir.1974) (citing cases).
 
 
 21
 The NGA also provides that a party "may apply for a rehearing within thirty days after issuance of such order." 15 U.S.C. § 717r(a). Although the NGA's time limit is seemingly cast in permissive terms, id., it is settled that "the time requirements of the statute are as much a part of the jurisdictional threshold as the mandate to file for a rehearing." Boston Gas Co. v. FERC, 575 F.2d 975, 977 (1st Cir.1978); see also Associated Gas Distribs. v. FERC, 824 F.2d 981, 1004 (D.C.Cir.1987) (treating as jurisdictional section 717r(a)'s requirement of an "application for rehearing filed within 30 days"), cert. denied sub nom. Interstate Natural Gas Ass'n v. FERC, 485 U.S. 1006, 108 S.Ct. 1468, 1469, 99 L.Ed.2d 698 (1988); Placid Oil Co. v. FERC, 666 F.2d 976, 980 (5th Cir.1982) (same). Consequently, the time limit must be strictly construed, Tennessee Gas Pipeline Co. v. FERC, 871 F.2d 1099, 1109 (D.C.Cir.1989), and may not be waived by FERC or evaded by the courts. Associated Gas Distribs., 824 F.2d at 1005 (holding that "the Commission cannot waive the jurisdictional bar" against an untimely petition for rehearing); ASARCO, Inc. v. FERC, 777 F.2d 764, 774-75 (D.C.Cir.1985) (rejecting argument that section 717r is nothing more than an exhaustion requirement to which judicially created exceptions apply); Boston Gas, 575 F.2d at 979 (holding that "[n]either the Commission nor the courts are given any form of jurisdictional discretion").
 
 
 22
 In light of these principles, we decline to address petitioners' claim that FERC should have prepared an EIS for the pipeline project. FERC adopted the recommendation of its staff that an environmental assessment would be sufficient for the project on May 18, 1989, when it conditionally granted TN Gas a certificate of public convenience and necessity. See Tennessee Gas Pipeline Co., 47 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,227, at 61,799 (1989). Yet petitioners did not move for rehearing of that order until January 22, 1990, approximately eight months later. To be sure, petitioners could not have moved for rehearing until they became parties to the FERC proceeding, see 15 U.S.C. § 717r(a), but we decline to exempt from the time limit those who, like petitioners, choose to sit on the sidelines to wait and see what happens in FERC proceedings.[2]
 
 
 23
 To create such an exemption from section 717r(a) would frustrate its requirement of "immediate action on the part of those aggrieved," which "assures all participants that their claims will be resolved expeditiously." Boston Gas Co. v. FERC, 575 F.2d 975, 979 (1st Cir.1978). In addition, so construing the statute would frustrate "Congress's intention to commit to FERC rather than to the judiciary the interpretation and application of the laws regarding the generation and sale of energy." Public Serv. Co. of New Mexico v. FERC, 863 F.2d 1021, 1023 (D.C.Cir.1988) (statement of D.H. Ginsburg, J., concurring in denial of petition for rehearing en banc, joined by R.B. Ginsburg, Starr, Silberman, Buckley, Williams, and Sentelle, JJ.). As we further stated in Public Serv. Co. of New Mexico,
 
 
 24
 FERC oversees a complex body of laws; proceedings before it often involve multitudinous claims and parties. Resolution of the conflicts among the various competing considerations in a particular case is dependent upon FERC's ability to consider all the issues and arguments at once and in relation to each other. If a party could withhold from FERC some or all of its claims, hoping for whatever reason to receive more sympathetic treatment in court if FERC has not first had an opportunity to fault them, then "FERC's complex and multi-party proceedings would soon overwhelm the system."[299 U.S.App.D.C. 176] Id. (quoting ASARCO, 777 F.2d at 774). We think this analysis is equally applicable to nonparties who withhold their claims from FERC by not intervening in the first place. Therefore, we lack jurisdiction over petitioners' untimely EIS argument.
 
 
 25
 We perceive a further jurisdictional defect not raised by respondents. Petitioners seek our review of one issue that remains pending before FERC on rehearing--the propriety of the OPPR Director's June 3, 1992 letter-order acknowledging the acceptability of Providence Gas's construction. Although FERC granted petitioners' motion for rehearing of that decision on July 17, 1992, FERC has yet to rule on the merits of petitioners' claim. It seems to us clearly implicit in both subsections of section 717r that FERC must be allowed to rule on the matters raised in the rehearing petition before judicial review may be had. Section 717r's "obvious purpose ... is to afford the Commission the first opportunity to consider, and perhaps dissipate, issues which are headed for the courts." Public Serv. Comm'n v. Federal Power Comm'n, 543 F.2d 757, 774 n. 116 (D.C.Cir.1974) (emphasis added) (citing cases), cert. denied sub nom. Sun Oil Co. v. Public Serv. Comm'n, 424 U.S. 910, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); see also Public Serv. Co. of New Mexico, 863 F.2d at 1023 (D.H. Ginsburg, J., concurring in denial of petition for rehearing en banc, joined by six Circuit Judges). Without question it would frustrate that salutary purpose to allow a petitioner to "satisfy" the rehearing requirements by filing a rehearing petition with FERC then immediately petitioning for judicial review. Therefore, we hold that section 717r(a) denies us jurisdiction to review matters, such as FERC's approval of the Providence Gas construction, raised in rehearing petitions before FERC until FERC denies the petition or until FERC rules on the merits of a granted petition for rehearing. See American Public Gas Ass'n v. Federal Power Comm'n, 555 F.2d 852, 856 (D.C.Cir.1976) (per curiam) (holding that a FERC order "lacks jurisdictional ripeness for review until the Commission has disposed of a petition to reconsider alleged error in it").
 
 
 26
 We do have jurisdiction over petitioners' remaining claims by virtue of 15 U.S.C. § 717r(b), which allows parties "aggrieved by" FERC orders to seek judicial review. We have held that "a party is aggrieved within the meaning of section 19(b) of the Natural Gas Act [15 U.S.C. § 717r(b) ] if as the result of an order of [FERC] it has sustained 'injury in fact' to an interest 'arguably within the zone of interests to be protected or regulated' by [FERC] under the Act." Northwestern Pub. Serv. Co. v. Federal Power Comm'n, 520 F.2d 454, 458 (D.C.Cir.1975) (quoting Sierra Club v. Morton, 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972)); see also Panhandle Producers and Royalty Owners Ass'n v. Economic Regulatory Admin., 822 F.2d 1105, 1109 (D.C.Cir.1987).[3]
 
 
 27
 Although the issue might be viewed as a close one, we believe petitioners' uncontradicted allegations that the pipeline constitutes "a permanent aesthetic eyesore" and a "continuing safety hazard" demonstrate that they suffer aggrievement within the meaning of the NGA. In arguing to the contrary, respondents overlook two important points. First, because of "FERC's refusal to hold an evidentiary hearing," petitioners' "claimed injuries 'must be taken as proven,' insofar as the [statutory] [299 U.S.App.D.C. 177] standing issue is concerned," unless they are "untenable." General Motors Corp. v. FERC, 656 F.2d 791, 795 n. 9 (D.C.Cir.1981) (quoting City of Pittsburgh v. Federal Power Comm'n, 237 F.2d 741, 749 (D.C.Cir.1956)). Though petitioners' allegations of harm are far from compelling on the standing issue, given that the pipeline as built traverses none of their properties, we cannot say they are untenable.
 
 
 28
 Second, " '[a]esthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society.' " United States v. Students Challenging Regulatory Agency Practices, 412 U.S. 669, 686, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973) ("SCRAP ") (quoting Sierra Club v. Morton, 405 U.S. 727, 734, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972)). As such, the Supreme Court has held, harm to those interests constitutes injury in fact for purposes of statutes allowing judicial review for persons "aggrieved by" or "adversely affected" by agency action. Id. We therefore hold that petitioners are aggrieved by FERC's actions in this case and have standing under 15 U.S.C. § 717r(b) to raise its claims on appeal.
 
 
 29
 For the reasons stated above, we lack jurisdiction over petitioners' claim that FERC should have prepared an EIS rather than an environmental assessment, because their petition for rehearing on that issue was untimely. Their claim that the OPPR Director should not have approved Providence Gas's alternative pipeline route, which remains pending before FERC on a granted motion for rehearing, is likewise beyond our jurisdiction and will remain so until FERC disposes of that claim. All of petitioners' remaining claims are within our jurisdiction under 15 U.S.C. § 717r(b).
 
 B. Article III Standing
 
 30
 We begin with a brief recitation of the familiar principles of standing. The Constitution limits the jurisdiction of the federal courts to "Cases" or "Controversies." Art. III, § 2. A case or controversy exists--that is, a plaintiff has "standing"--if he can establish three elements. First, he must have suffered "injury in fact," which is defined as an "invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, U.S. 112 S.Ct.2130, 2136, 119 L.Ed.2d 351 (1992) (internal quotation marks, footnote and citations omitted). Second, the injury must be "fairly ... trace[able] to the challenged action of the defendant, and not ... [to] the independent action of some third party not before the court." Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 41-42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976); see also Defenders of Wildlife, U.S. at 112 S.Ct. at 2136. Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " Id. (quoting Eastern Kentucky Welfare Rights Org., 426 U.S. at 38, 96 S.Ct. at 1924).
 
 
 31
 Respondents argue that petitioners cannot show injury in fact because the construction of the pipeline in question has been completed without apparent harm to their properties. Alternatively, respondents argue that the only judicial remedy for petitioners' injury would be to order the pipeline removed from the ground. However, because it would be prohibitively expensive to remove the operational pipeline, respondents contend that it is highly unlikely that such an order would be issued and thus that petitioners' injury would not be redressable by a favorable decision from this Court. Therefore, they argue, this appeal should be dismissed in its entirety for lack of standing.
 
 
 32
 In our view, respondents' standing argument fails for at least two reasons. First, as we held with regard to petitioners' status as aggrieved parties under the NGA, petitioners' allegations, impugned by neither the record nor counsel for respondents, that the pipeline constitutes a "permanent aesthetic eyesore" and a "continuing safety hazard" demonstrate injury in fact. See SCRAP, 412 U.S. at 686, 93 S.Ct. at 2415 (holding that aesthetic harm can constitute injury in fact); Sierra Club v. Morton, 405 U.S. 727, 734, 92 S.Ct. 1361, [299 U.S.App.D.C. 178] 1366, 31 L.Ed.2d 636 (1972) (same). That injury, it seems to us, is fairly traceable to respondents' installing the pipeline in the first place, and respondents do not even question that proposition. As for redressability, though it would be impractical to order that the completed and functional pipeline be removed, petitioners have not asked for so drastic a remedy. Moreover, it makes no sense to us that petitioners' standing to seek judicial review can be vitiated by respondent-intervenors' haste to construct the pipeline "under certificates which, though final, were then under direct ... attack and subject ... to the possibility of judicial reversal."[4] Callery Properties, Inc. v. Federal Power Comm'n, 335 F.2d 1004, 1018 (5th Cir.1964), rev'd on other grounds sub nom. United Gas Improvement Co. v. Callery Properties, Inc., 382 U.S. 223, 86 S.Ct. 360, 15 L.Ed.2d 284 (1965).
 
 
 33
 Second, as petitioners correctly observe, the Supreme Court's decision in Lujan v. Defenders of Wildlife, --- U.S. ----, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), supports their standing to bring this appeal. In Defenders of Wildlife, plaintiffs, American organizations dedicated to environmental and wildlife conservation, sued to enjoin a regulation rescinding a prior requirement that federal agencies consult the Secretary of the Interior before approving or funding projects in foreign nations that might jeopardize the existence of threatened or endangered species or harm their habitat there. In support of their standing, plaintiffs filed affidavits of several members stating that they had witnessed harm to protected wildlife in Sri Lanka (and the "ecosystem" at large) resulting from a project funded by the Agency for International Development and that they intended to return to Sri Lanka someday. Id. at ---- - ----, 112 S.Ct. at 2138-39. Plaintiffs' affiants also stated that they had a vocational interest in the plight of the environment and protected species worldwide. Id. at ----, 112 S.Ct. at 2139. Concluding that these allegations were insufficient to show injury in fact and redressability, the Court held that the plaintiffs lacked standing. Id. at ---- - ----, 112 S.Ct. at 2138-42.
 
 
 34
 However, in so ruling, the Court expressly distinguished cases such as this one, "where plaintiffs are seeking to enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs." Id. at ----, 112 S.Ct. at 2142. The Court listed the following as examples of that type of requirement: "[T]he procedural requirement for a hearing prior to denial of their license application, or the procedural requirement for an environmental impact statement before a federal facility is constructed next door to them." Id. As to such procedural rights, Defenders of Wildlife further explained that
 
 
 35
 There is this much truth to the assertion that "procedural rights" are special: The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy. Thus, under our case-law, one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an Environmental Impact Statement, even though he cannot establish with any certainty that the Statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years.
 
 
 36
 Id. at ---- - ---- n. 7, 112 S.Ct. at 2142-43 n. 7 (emphasis added).
 
 
 37
 [299 U.S.App.D.C. 179] We deem these principles controlling here and fully supportive of petitioners' standing. By complaining of FERC's failure to give them personal notice of the TN Gas proceedings and to hold an evidentiary hearing, petitioners clearly seek to enforce "procedural requirement[s] the disregard of which could impair a separate concrete interest of theirs." Id. at 112 S.Ct. at 2142. That being the case, the mere fact that petitioners may not "meet[ ] all the normal standards for redressability and immediacy" does not, standing alone, defeat their standing. Id. at n. 7, 112 S.Ct. at 2142 n. 7. We therefore conclude that petitioners do have Article III standing to bring this appeal.
 
 C. Ripeness of Petitioners' Claims
 
 38
 Because several of petitioners' claims relate to matters still pending before FERC, respondents argue that those claims are not presently "ripe" for judicial review. The claims are that FERC should (1) revoke its prior authorization for TN Gas to commence construction of its leg of the pipeline, in light of RIDEM's later suspension of TN Gas's permit to construct the part of the pipeline traversing previously unknown wetlands, and (2) rescind the OPPR Director's letter-order approving the alternative route for the Providence Gas pipeline construction. Petitioners raised the first issue in a motion to vacate or suspend and raised the second issue in a timely motion for rehearing. FERC granted the rehearing petition but has yet to rule definitively on the claims the petition and the motion raised. FERC points out that through further proceedings before FERC or RIDEM, those matters might well be resolved altogether, thus obviating the need for judicial review. Petitioners have offered no response at all to FERC's ripeness argument in their brief and offered no meaningful response at oral argument in response to questions from the Court.
 
 
 39
 In view of our holding that the untimeliness of petitioners' challenge to FERC's approval of the Providence Gas construction deprives us of jurisdiction over that claim, we need not decide whether that claim is ripe. As to petitioners' argument that FERC should not have authorized TN Gas to commence construction, we, like petitioners, find FERC's ripeness argument unanswerable. Administrative action is "ripe" for judicial review if (1) "the issues tendered are appropriate for judicial resolution" at the present time and (2) "the hardship to the parties if judicial review is denied at that stage" favors immediate judicial review. Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 162, 87 S.Ct. 1520, 1523, 18 L.Ed.2d 697 (1967). The issue FERC has identified fails at the first step of the Toilet Goods test, and petitioners have not even suggested that they will suffer hardship if we do not address their challenge now. Petitioners' claim does not present us with a pure question of law. To the contrary, it appears to involve complicated and sensitive administrative applications of law and policy to unsettled and ever-shifting factual developments. Also, given the pendency of petitioners' timely motion to vacate or suspend the challenged FERC decision is not even "final."
 
 
 40
 Issues that remain pending before FERC are inappropriate for judicial resolution as a matter of law and therefore are unripe, at least in the absence of a substantial showing of hardship. Louisiana Power & Light Co. v. Federal Power Comm'n, 526 F.2d 898, 910 (5th Cir.1976) (holding that "matters still pending before the Commission ... [are] not yet ripe for judicial review"); see also Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Federal Power Comm'n, 510 F.2d 198, 210 (D.C.Cir.1975) (holding that in view of the "proceedings now being conducted by the Commission ... the [challenged] determination of the Commission is not ripe for review"); California Co. v. Federal Power Comm'n, 411 F.2d 720, 721 (D.C.Cir.1969) (per curiam) (holding that "petitions for review filed prior to [the Commission's] decision on the merits of the applications for rehearing are premature"). We consequently hold that petitioners' claim that FERC erred in authorizing TN Gas to begin construction is not presently ripe for judicial review and will not become ripe [299 U.S.App.D.C. 180] until FERC acts on petitioners' motion to vacate or suspend.
 
 III.
 
 41
 Petitioners' claims that FERC erred in not convening a hearing on TN Gas's application for a certificate of public convenience and necessity and in its failure to give them personal notice of the proceedings are arguably unripe. There is the theoretical possibility that the result in the continuing administrative proceedings could completely moot these questions, thus depriving them of prudential ripeness. However, this possibility appears only theoretical, as Commission counsel willingly conceded at oral argument. Even if the construction permit is found to be flawed for specific route-related reasons, this does not necessarily affect the justiciability of claims related not to the construction permit but to the initial certificate of public convenience and necessity, as to which petitioners would assert a continuing interest in any event. That is, petitioners' complaint is not simply that FERC did not give them notice and a hearing, but specifically did not do so in time for them to participate in the original proceedings. Therefore, these objections go to the validity of the entire process, not just the selection of a particular route. How close a potential pipeline must come to property owners' property in order to grant them standing is not a matter we must reach, as we decide the claims entitle petitioners to no relief in any event.
 
 
 42
 A. The Natural Gas Act's Hearing Requirement
 
 
 43
 Petitioners' first claim is that the NGA required an in-person, trial-type hearing in this case. Respondents counter with the argument that the NGA does not require such a hearing where, as here, the paper record provides a sufficient basis for resolving the relevant issues. Petitioners dismiss respondents' concept of a "paper hearing" as nothing more than "semantics." We cannot accept petitioners' contention, in view of American Public Gas Ass'n v. Federal Power Comm'n, 567 F.2d 1016, 1067 (D.C.Cir.1977) (rejecting argument that the NGA requires oral, trial-type hearings in all cases), cert. denied, 435 U.S. 907, 98 S.Ct. 1456, 1457, 55 L.Ed.2d 499 (1978), and Wisconsin Gas Co. v. FERC, 770 F.2d 1144, 1168 n. 41 (D.C.Cir.1985) (same), cert. denied sub nom. Transwestern Pipeline Co. v. FERC, 476 U.S. 1114, 106 S.Ct. 1968, 1969, 90 L.Ed.2d 653 (1986). Furthermore, we have held on several occasions that FERC need not conduct an evidentiary hearing when there are no disputed issues of material fact, see, e.g., Woolen Mills Assocs. v. FERC, 917 F.2d 589, 592 (D.C.Cir.1990); Pennsylvania Pub. Util. Comm'n v. FERC, 881 F.2d 1123, 1126 (D.C.Cir.1989), and that even where there are such disputed issues, FERC need not conduct such a hearing if they may be adequately resolved on the written record. See Louisiana Ass'n of Indep. Producers and Royalty Owners v. FERC, 958 F.2d 1101, 1113-15 (D.C.Cir.1992); Citizens for Allegan Cty., Inc. v. Federal Power Comm'n, 414 F.2d 1125, 1129 (D.C.Cir.1969). We review FERC's decision not to hold a hearing only for "abuse of discretion," Woolen Mills, 917 F.2d at 592, and, to say the least, we find none on the record before us.
 
 
 44
 B. The Notice Requirements of the Natural Gas Act and Due Process
 
 
 45
 Petitioners' final claim is that by virtue of the NGA and the Due Process Clause, they were entitled to personal notice of the pendency of the FERC proceedings once TN Gas proposed to route the pipeline across their property. We categorically reject petitioners' interpretation of the NGA. Although the NGA provides that upon FERC's receipt of an application for a certificate of public convenience and necessity, "notice thereof shall be served upon such interested parties," 15 U.S.C. § 717f(d), petitioners conveniently overlook the very next phrase in the statute, "in such manner as the Commission shall, by regulation, require." Id. Pursuant to section 717f(d), FERC has issued a regulation stating that "[n]otice of each application filed ... will be published in the Federal Register and copies of such notice mailed [299 U.S.App.D.C. 181] to States affected thereby." 18 C.F.R. § 157.9 (1992). FERC did exactly that in this case, thereby presumptively giving notice of the FERC proceedings regarding TN Gas's application "to all persons residing within the States of the Union and the District of Columbia," 44 U.S.C. § 1508 (1988); see also 44 U.S.C. § 1507 (1988), so there was no violation of the NGA.
 
 
 46
 Petitioners also advance due process arguments requiring more extended consideration. Because of their property interest in their own property, the Due Process Clause, as interpreted in Tulsa Professional Collection Svcs. v. Pope, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983); Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); and Mullane v. Central Hanover Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), required FERC to give them personal notice of the FERC proceedings. They argue that the various notices FERC published in the Federal Register were inadequate to put them on notice that the pipeline could cut across their property because the notices did not indicate that the pipeline would come anywhere near their property.
 
 
 47
 This defect was not cured by subsequent events or notices, such as the 1987 negotiations with TN Gas or the 1989 notice that TN Gas had been awarded a certificate of public convenience and necessity, petitioners argue, because those events or notices failed to advise petitioners of their right to intervene and challenge the FERC decision. Nor did petitioners' 1990 intervention in the FERC proceeding offer meaningful notice, because by that time the original decision to approve TN Gas's application had already been made and the route had already been selected. Therefore, petitioners contend, this Court should vacate the FERC order under review and remand for de novo reconsideration thereof.
 
 
 48
 Assuming without deciding that the Due Process Clause ordinarily requires FERC to give personal notice to neighboring landowners, FERC's failure to do so in this case did not violate due process. Petitioners' 1987 and 1988 negotiations with TN Gas apparently gave them actual notice of the FERC proceedings eight months (at the latest) before FERC granted TN Gas's application for a certificate of public convenience and necessity on May 18, 1989. See Tennessee Gas Pipeline Co., 47 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,227 (1989). In any event, the Commission granted petitioners' motion for late intervention, undertook a supplemental environmental assessment to consider specific alternative routing proposals suggested by petitioners, as well as others, and subsequently modified the route of the pipeline project in an effort to accommodate their concerns.
 
 
 49
 The purpose of notice is to "inform[ ] [the recipient] that the matter [in which his protected interests are at stake] is pending." Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In light of that purpose, we hold that the Due Process Clause does not require notice where those claiming an entitlement to notice already knew the matters of which they might be notified. See Codd v. Velger, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam) (holding that even if the plaintiff police officer would ordinarily have been entitled to a pre-termination hearing under the Due Process Clause, he was not entitled to such a hearing where he did not dispute the truth of the charges against him, because the purpose of a hearing is to resolve disputed factual issues); Citizens for Allegan Cty., Inc. v. Federal Power Comm'n, 414 F.2d 1125, 1128 (D.C.Cir.1969) (holding that the "right of opportunity for hearing does not require a procedure that will be empty sound and show, signifying nothing"). FERC's failure to give petitioners personal notice accordingly did not violate due process.
 
 CONCLUSION
 
 50
 Although petitioners have standing to bring this appeal, their claim that FERC should have prepared an environmental impact statement instead of an environmental assessment was not presented to FERC in [299 U.S.App.D.C. 182] timely fashion. Because its untimeliness precludes us, as a jurisdictional matter, from hearing it, we dismiss that claim with prejudice. In addition, petitioners' claim that FERC should not have approved the Providence Gas route is beyond our jurisdiction because it remains pending before FERC on a granted motion for rehearing, and their similar claim as to TN Gas is not presently ripe for judicial review. We dismiss these two claims without prejudice and remand them to FERC, given that they will not be ripe or within our jurisdiction until FERC addresses them in the first instance.
 
 
 51
 On the merits, the Natural Gas Act did not require FERC to hold a trial-type evidentiary hearing because the record formed a sufficient basis for FERC to address intelligently petitioners' contentions. Moreover, because petitioners had actual notice of the pendency of the FERC proceedings in ample time to intervene and be heard, the Due Process Clause did not require FERC to give them personal notice. Accordingly, as to these claims we deny the petition for review.
 
 
 52
 It is so ordered.[299 U.S.App.D.C. 183] APPENDIX
 
 
 53
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 [1]
 This route and the other routes contemplated over the drawn out proceedings recounted below are indicated on the map filed as an Appendix to this opinion
 
 
 [2]
 We leave for another day the question of whether section 717r(a)'s thirty-day period for rehearing starts to run against nonparties on the date of FERC's order or, if no notice was given before that time, on the date of notice. In either case, petitioners' claim that FERC should have prepared an EIS was untimely
 
 
 [3]
 We note that some of our earlier cases have not applied the Northwestern Pub. Serv. Co. "zone of interest" test in determining whether a party is aggrieved under section 717r. See, e.g., Office of the Consumers' Counsel of Ohio v. FERC, 808 F.2d 125, 128-29 (D.C.Cir.1987) (holding that aggrievement is shown where petitioner alleges injury-in-fact, i.e., "concrete, perceptible harm of a real, non-speculative nature"); North Carolina Utilities Comm'n v. FERC, 653 F.2d 655, 662 (D.C.Cir.1981) (same); see generally Panhandle Producers, 822 F.2d at 1109 n. 2 (highlighting this inconsistency in the determination of the existence of a grievance under section 717r). In Panhandle Producers, however, we made it clear that the Northwestern Pub. Serv. Co. analysis is controlling. Id. In any event, because respondents have not disputed the rather obvious proposition that the property interests of neighboring landowners arguably fall within the zone of interests the NGA protects, the result in this case turns solely on whether or not petitioners have alleged injury-in-fact
 
 
 [4]
 Of course, the fact that the pipeline is already operational raises a mootness question. Although respondents have not raised it, we are obligated to do so sua sponte because mootness is a jurisdictional issue. Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70, 104 S.Ct. 373, 374, 78 L.Ed.2d 58 (1983) (per curiam); Tucson Med. Center v. Sullivan, 947 F.2d 971, 977 (D.C.Cir.1991). In light of the continuing harm to petitioners' aesthetic interests discussed above in relation to standing, it is not the case that "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." SEC v. Medical Cmte. for Human Rights, 404 U.S. 403, 407, 92 S.Ct. 577, 580, 30 L.Ed.2d 560 (1972). Accordingly, this case is not moot