**BOSTON GAS COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Algonquin Gas Transmission Company et al., Intervenors.**

No. 77–1473.

United States Court of Appeals, First Circuit.

Argued April 4, 1978.

Decided May 12, 1978.

L. William Law, Jr., Gen. Counsel, Boston, Mass., with whom F. X. O'Brien, Boston, Mass., was on brief, for petitioner.

Joseph G. Stiles, Atty., Washington, D. C., with whom Robert R. Nordhaus, Gen. Counsel, and Howard E. Shapiro, Sol., Washington, D. C., were on brief, for respondent.

Harry H. Voigt, New York City, with whom E. David Doane, Arthur M. Schwartzstein and LeBoeuf, Lamb, Leiby & MacRae, New York City, were on brief, for intervenor Orange and Rockland Utilities, Inc.

Francis H. Caskin, Washington, D. C., with whom Shannon & Morley, Washington, D. C., was on brief, for intervenor New Bedford Gas and Edison Light Co.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Because of shortages in the supply of natural gas, the Federal Power Commission in 1971 began issuing orders to gas pipeline operators to regulate the curtailment of the delivery of gas to their customers. In 1973 the Commission refined its policy by dividing the end users of natural gas into nine categories ranked in order of supply priority. Pipeline operators were to obtain from their wholesale customers a breakdown of

their sales by gas end use in each of the nine priority categories for a base year. Curtailment of gas supply was then to be imposed on the pipeline's customers in proportion to the volume of gas they each distributed in the base year to gas users in the lowest priority categories.

Algonquin Gas Transmission Co. operated a natural gas pipeline and filed an end use curtailment plan in accordance with the Commission's orders in 1973. The Commission formally accepted the plan in 1975.

Later in 1975 and early in 1976 certain customers of Algonquin complained to the Commission that the implementation of Algonquin's plan resulted in unfair and discriminatory curtailment of their supply of natural gas. Hearings were held in June, 1976. In January, 1977, the administrative law judge issued an opinion substantially agreeing with the protests of the complaining customers and ordering Algonquin to take corrective action. Several parties to the hearing filed exceptions to the administrative law judge's opinion, including Boston Gas Co., the petitioner in the present case. Boston Gas Co. was a customer of Algonquin, but unlike those customers who initially sought relief from the Commission, Boston Gas was satisfied with the Algonquin curtailment plan. Moreover, since the total amount of gas curtailment Algonquin had to impose on its customers as a group would not be altered by the Commission's decision, if the complaining customers had their allocations increased by the Commission's order, the allocations of the rest of Algonquin's customers, including Boston Gas, would necessarily decrease.

On July 5, 1977 the Commission issued an "Order Modifying Initial Decision" which clarified, but did not substantially alter, its original decision to order Algonquin to modify the implementation of its curtailment plan. On August 8, 1977 Boston Gas filed an application for rehearing of the Commission's July 5 order. The Commission denied the application for rehearing on its merits on September 5. Boston Gas appealed to this court to review the Commission's action.

■ On March 13, 1978, only a few days before oral argument, the Commission filed a motion to dismiss Boston Gas' appeal on the grounds that the August 8 application for rehearing had not been filed within thirty days as required by statute and was therefore untimely. Because we agree that § 19(a) of the Natural Gas Act, 15 U.S.C. § 717r(a) bars our exercising jurisdiction over this appeal, we dismiss Boston Gas' petition without reaching the merits of its claims.

15 U.S.C. § 717r(a) provides that:

"Any person . . . aggrieved by an order issued by the Commission in a proceeding under this act to which such person, state, municipality, or state commission is a party may apply for a rehearing within thirty days after the issuance of such order. . . . Upon such application the Commission shall have power to grant or deny rehearing or to abrogate or modify its order without further hearing. . . . No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon. . . ."

■ There is no question that under the Natural Gas Act "an application for rehearing is a jurisdictional prerequisite to judicial review." *Public Service Comm. of the State of New York v. Federal Power Commission*, 177 U.S.App.D.C. 272, 290, 543 F.2d 757, 775 n. 116 (1974); *Utah Power and Light Co. v. Federal Power Commission*, 339 F.2d 436, 438 (10th Cir. 1964); *Pan American Petroleum Corp. v. Federal Power Commission*, 268 F.2d 827 (10th Cir. 1959); *Dayton Power and Light Co. v. Federal Power Commission*, 102 U.S.App.D.C. 164, 165, 251 F.2d 875, 876 (1958); *Michigan Consolidated Gas Co. v. Federal Power Commission*, 83 U.S.App.D.C. 395, 167 F.2d 264 (1948). Moreover, the language of several of the above cases strongly suggests that the time requirements of the statute are as much a part of the jurisdictional threshold as the mandate to file for a rehearing. *See Pan American Petroleum Corp., supra,* at 830;

*Dayton Power and Light Co., supra,* 102 U.S.App.D.C. at 251, at 876; *Michigan Consolidated Gas Co., supra,* 83 U.S.App.D.C. at 395, at 264. The Commission itself has consistently held that the 30 day time limit "is a jurisdictional time limit which this Commission has no authority to extend." *Turnbull & Zoch Drilling Co.,* 37 F.P.C. 255, 256 (1967). *See Power Authority of the State of New York,* 31 F.P.C. 467, 468 (1964); *Phillips Petroleum Co.,* 24 F.P.C. 1008, 1010 (1960).

Despite this authority Boston Gas argues that we should not dismiss their appeal for three reasons: First, because other courts have permitted appeals to go forward despite "minor aberration[s]" and "irregularities" from the statute's technical requirements; second, because the purpose of the statute, that of giving the Commission an opportunity to modify or correct its decisions before submitting an issue to judicial review, was fulfilled in the present case; and, third, because by issuing a formal denial of the application for rehearing on the merits instead of dismissing the application as untimely the Commission has, in a sense, waived its objections to the application. We do not find any of these arguments to be sufficiently meritorious to enable us to accept jurisdiction over the appeal.

The cases called to our attention in which courts have bypassed procedural defects are all distinguishable from the current case in that they involved the application of traditional equitable principles or rules of statutory interpretation to situations where it was often unclear how the statute's requirements were meant to be implemented. In *Public Service Comm. of the State of New York v. Federal Power Commission, supra,* the petitioner had filed a timely application for a rehearing of a Commission order only to have that application denied by a subsequent order. The court simply and correctly held that a second application for a rehearing was not required in order to obtain judicial review of the contents of the second order. To interpret the statute otherwise would be to permit an endless cycle of applications for rehearing and denials. *Dept. of Fish and Game of the State of*

*California v. Federal Power Commission,* 359 F.2d 165 (9th Cir. 1966) involved a similar analysis.

In *Sam Rayburn Dam Electric Cooperative v. Federal Power Commission,* 169 U.S. App.D.C. 281, 515 F.2d 998 (1975), petitioner did not interpret an ambiguous Commission order as affecting its interests. However, when the Commission issued an order denying applications for rehearing by other parties which clearly indicated that petitioner would be adversely affected, petitioner promptly filed for a rehearing. Recognizing that petitioner had acted in good faith and that it could not be said with certainty that petitioner was aggrieved by the original order (and therefore would have had no basis for an earlier complaint), the court held that submitting a timely application after the second order was a sufficient predicate to judicial review. In *Panhandle Eastern Pipeline Co. v. Federal Power Commission,* 343 F.2d 905 (8th Cir. 1965), a timely petition for review was filed with the court of appeals of the Tenth Circuit. The Commission moved for dismissal on the grounds that venue was improper. The Tenth Circuit disagreed but the Supreme Court ultimately upheld the Commission's position. Petitioner then moved to have the case transferred to the Eighth Circuit where venue would be proper according to the Supreme Court's ruling. The Eighth Circuit concluded that the original error in venue and the attempt to transfer the case had no effect on the jurisdiction of the court.

*Natural Gas Pipeline Company of America v. Federal Power Commission,* 253 F.2d 3 (3d Cir. 1958) and *Texas-Ohio Gas Co. v. Federal Power Commission,* 93 U.S.App. D.C. 117, 207 F.2d 615 (1953), both involved petitioner's relying on communications from the Commission which prevented them from otherwise complying with the statute. In *Dayton Power and Light Co. v. Federal Power Commission,* 102 U.S.App.D.C. 164, 251 F.2d 875 (1957), the court found that the petitioner had complied with the time requirements of the statute and had failed to comply only with non-jurisdictional regu-

lations regarding the number of copies of applications which must be filed.

█ In the present case petitioner presents no meritorious excuse for its failure to file a timely application for rehearing. Instead, it asserts that its failure should be excused because the purpose of the statute has been met by the submission of its application and the Commission's failure to dismiss the application as untimely. As to the first point we do not think that the purpose of the statute is purely one of administrative exhaustion. Such a goal would be accomplished by a provision which simply required that an application for rehearing precede a petition for judicial review without any time limit whatsoever. The fact that a 30 day limit is included in the statute clearly indicates that the Act requires not only administrative exhaustion but immediate action on the part of those aggrieved. All the parties to a proceeding before the Commission, as well as the Commission itself, have the statutory right to be free from prolonged uncertainty resulting from delayed efforts to resolve an issue. A formal time limit assures all participants that their claims will be settled expeditiously. We have no basis for assuming that the need for prompt resolution of Commission affairs is any less important a goal than that of permitting the Commission a second chance to modify its decisions. Petitioner's argument would require us to strike the 30 day time limit from the statute or give the Commission the authority to extend the time limit whenever it sees fit to do so. We decline to do either.

While our concerns here may seem unduly technical, we believe they are of considerable importance both for administrative agencies and the courts. To accept petitioner's argument, we would have to rewrite § 19(a) fundamentally. The statute does not give the slightest hint that the Commission should have some standardless discretionary role in determining whether or not an aggrieved party can secure judicial review. Rather it appears to be a tightly structured and formal provision. Neither the Commission nor the courts are given any form of jurisdictional discretion. Indeed, as noted previously, the Commission recognizes this limitation on its authority. Moreover, petitioner has not suggested, nor can we perceive, a rule of general application which would permit the Commission to avoid the requirements of the thirty day time limit in this case, but would restrict it from doing so in other circumstances. There is nothing about the present case which indicates that it requires special treatment. Thus, were we to adopt petitioner's interpretation of the statute, we would have to permit the Commission to pick and choose among those parties filing untimely applications for rehearing, selecting which of them, if any, are entitled to judicial review. We see no basis for replacing the uniform ground rules the statute so clearly sets forth with a rule permitting either unguided discretion or inadvertence to control the jurisdiction of the federal courts.

█ Finally, we see little merit in petitioner's argument that the Commission has waived any objection as to the untimeliness of petitioner's application. Two of the cases petitioner cited for this proposition involve waivers of the Commissioner's procedural rules, not statutory requirements. *See City of Pittsburgh v. Federal Power Commission*, 99 U.S.App.D.C. 113, 237 F.2d 741 (1956) (waiver of Commission Rule 1.31(c) regarding timely objections to the admission or exclusion of evidence); *Dayton Power and Light Co., supra* (waiver of procedural Rule 1.15(b) as to number of copies of application to be filed). Whatever merit there may be in deciding that the Commission may be held by its conduct to have waived its own procedural rules, an issue we do not reach in the present case, such decisions provide no support for the altogether different proposition that the Commission may waive the jurisdictional requirements imposed on it by statute. In the third case cited, *Natural Gas Pipeline Co. of America, supra*, the Commission accepted a timely protest telegram as an application for rehearing and the Court concluded that this permitted it to accept juris-

**980**

diction over the appeal. Not only did the Commission's own actions in that case engender justifiable reliance on the part of the petitioner, but we know of no statutory prescription regarding the correct form of an application for rehearing. Thus it cannot be said in that case that a statutory jurisdictional requirement was waived.

We believe a case more on point is *Magnolia Petroleum Co. v. Federal Power Commission*, 236 F.2d 785 (5th Cir. 1956). There, the court refused to permit judicial review of a Commission order under § 19(b) of the Natural Gas Act since the order was not the result of an evidentiary hearing as was contemplated by the statute. The court concluded that, "[*I*]*rrespective of any label placed upon it by the Commission or the petitioners*, we think it plain that the Commission has simply promulgated regulations of general applicability and not an order reviewable under Section 19(b)." *Id.* at 791 (emphasis added). Similarly, we believe that in the present case, notwithstanding the Commission's issuing an "Order Denying Rehearing" on the merits, the petitioner's application was untimely and did not meet the Natural Gas Act's statutory requirements for judicial review.

Petitioner failed to file a timely application for rehearing with the Commission. As a result of that failure it deserved no more than to have its application summarily dismissed. We believe petitioner received far more than it was entitled to when the Commission issued an order discussing its application on the merits. However, one gratuitous response does not require another.

*Petition for review is denied.*