204 F.3d 1154 (D.C. Cir. 2000)
 City of Ocon to Falls, Wisconsin, Petitioner
v.
Federal Energy Regulatory Commission, Respondent
City of Oswego, New York and N.E.W. Hydro, Intervenors
State of Wisconsin, Petitioner
v.
Federal Energy Regulatory Commission, Respondent ,
N.E.W. Hydro, Intervenor
 Nos. 98-1594,99-1065
 United States Court of Appeals FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued January 14, 2000
Decided March 7, 2000
 
 [Copyrighted Material Omitted]
 On Petitions for Review of Order of theFederal Energy Regulatory Commission
 Carolyn Elefant argued the cause for petitioner City of Oconto Falls, Wisconsin.
 Lorraine C. Stoltzfus, Assistant Attorney General, State of Wisconsin, argued the cause for petitioner State of Wisconsin.James E. Doyle, Attorney General, State of Wisconsin, was on brief for petitioner State of Wisconsin.
 Judith A. Albert, Attorney, Federal Energy Regulatory Commission, argued the cause for the respondent. Timm L. Abendroth, Attorney, Federal Energy Regulatory Commission, was on brief for the respondent.
 Paul Vincent Nolan entered an appearance for intervenor City of Oswego, New York in No. 98-1594.
 Donald H. Clarke entered an appearance for intervenor N.E.W. Hydro, Inc. in Nos. 98-1594 and 99-1065.
 Before: Silberman, Henderson and Garland, Circuit Judges.
 Opinion for the court filed by Circuit Judge Henderson.
 Karen LeCraft Henderson, Circuit Judge:
 
 
 1
 On November 13, 1997 the Federal Energy Regulatory Commission (Commission, FERC) issued a license order awarding the Oconto Falls (Wisconsin) hydroelectric project to N.E.W. Hydro (NEW). See 81 FERC p 61,238 (1997). Both the City of Oconto Falls (City) and the Wisconsin Department of Natural Resources (WDNR) challenge the Commission's action.WDNR argues that the Commission breached its statutory obligation under section 10(j) of the Federal Power Act (FPA), 16 U.S.C. 803(j), to give "due weight" to WDNR's recommendations to protect fish. The City argues that the Commission improperly determined that: (1) the City's license application was "essentially equal" to NEW's application under section 15(a)(2) of the FPA, 16 U.S.C. 808(a)(2);(2) the Commission's "first to file" tie-breaker procedure applied; and (3) NEW's application need not be dismissed for anticompetitive activity with Wisconsin Electric Power Company, allegedly resulting from the Commission's licensure of NEW. In turn, the Commission challenges the court's jurisdiction over WDNR's petition for review because WDNR identified only the rehearing order, 85 FERC p 61,222 (1998), not the license order in its petition. For the reasons set forth infra, we conclude that we have jurisdiction to review WDNR's petition and, based on our review, the Commission satisfied its duty under section 10(j) of the FPA to give WDNR's recommendations "due weight." We further conclude that the Commission's factual determination that both NEW's and the City's applications were "essentially equal" is supported by substantial evidence, that the "first to file" tiebreaker procedure did not unfairly prejudice the City and that the Commission correctly declined to dismiss NEW's application. Accordingly, we deny both WDNR's and the City's petitions for review.
 
 I.
 
 2
 In 1977 the Federal Power Commission issued Wisconsin Electric Power Company (WEPCO) a license to operate a hydroelectric project (Oconto Falls Project) located on the Oconto River near Oconto Falls, Wisconsin, to expire December 31, 1993. In 1988 WEPCO filed a notice of intent to refile an application for relicensure but it failed to file its application before the December 31, 1991 deadline. Instead, WEPCO initiated discussions to sell the Oconto Falls Project to NEW. The sale was not completed by the December 31, 1991 deadline, however, and because no other party filed a notice of intent to file an application, the Oconto Falls Project became orphaned.[1] In February 1992 the Commission issued a public notice pursuant to Part I of the FPA, 16 U.S.C. 791a-823a, to solicit license applications. At that time NEW informed the Commission of its intent to file an application. In May 1992 the City informed the Commission of its intent to file a competing application. In addition the City petitioned FERC for an order declaring that any license application for the Oconto Falls Project was subject to a municipal preference pursuant to section 7(a) of the FPA, 16 U.S.C. 800(a).[2] The Commission ruled instead that section 15 of the FPA, 16 U.S.C. 808, governs an orphan proceeding and therefore declared the municipal preference inapplicable.[3] This court subsequently affirmed the Commission's decision. See Oconto Falls v. FERC, 41 F.3d 671, 674-75 (D.C. Cir. 1994).
 
 
 3
 In the meantime WEPCO accepted NEW's offer to acquire the Oconto Falls Project conditioned on NEW's licensure by the Commission. See License Order, 81 FERC at 61,982.On August 21, 1992 NEW requested the Commission to waive the "first stage" pre-filing consultation requirement to provide "the relevant Federal, State and interstate resource agencies" detailed studies, data and documentation on the Oconto Falls Project, see 18 C.F.R. 16.8(a)(1), (b), inasmuch as WEPCO had already completed the consultation requirement and had transferred all of the relevant materials to NEW. On September 1, 1992 the Commission Director granted NEW's request. In November 1992 the City requested a copy of WEPCO's Initial Consultation Package (ICP), which contained not only WEPCO's detailed studies and data but also the resource agencies' comments detailing the studies and methodologies they recommended WEPCO to use. NEW planned to use WEPCO's ICP to prepare its license application but WEPCO refused to make it available. The City subsequently petitioned the Commission for a copy of WEPCO's ICP to obtain the data it needed to prepare its application. In August 1993 NEW filed an application for a license with the Commission. Two months later the Commission ordered WEPCO to make its ICP publicly available and it did so in November 1993. Finally, in August 1994 the City filed a competing application for licensure with the Commission. Several months later, while the applications were pending, the City filed a complaint with FERC alleging anticompetitive activity by NEW and WEPCO, asking the Commission both to order them to cease the activity and to dismiss NEW's application.
 
 
 4
 Pursuant to section 10(j) of the FPA, the Commission must include as license conditions any recommendations from "State fish and wildlife agencies" unless the Commission determines that the recommended conditions are "inconsistent with the purposes and requirements" of the FPA or other laws. 16 U.S.C. 803(j)(1), (2). During the licensing process, WDNR recommended that the Oconto Falls Project licensee be required to reduce fish entrainment, i.e., their passage into and through the turbines of the hydroelectric project. On November 13, 1997 the Commission issued an order granting NEW the Oconto Falls Project license. See 81 FERC p 61,238 (1997) (License Order). The Commission concluded that both NEW's and the City's license applications were essentially equal, that the "first to file" tie-breaker procedure was appropriate under the circumstances and that NEW and WEPCO had not engaged in anticompetitive activity. After finding no evidence that entrainment significantly adversely affected the fish populations, the Commission also declined to impose WDNR's proposed conditions to reduce fish entrainment. On November 13, 1998 the Commission denied both WDNR's and the City's petitions for rehearing. See 85 FERC p 61,222 (1998) (Rehearing Order). The City then petitioned for review of the Commission's License Order and Rehearing Order while WDNR petitioned the Seventh Circuit for review of the Commission's Rehearing Order. WDNR's petition was transferred to this court and the two cases were consolidated.
 
 II.
 
 5
 The court upholds FERC's factual findings "if supported by substantial evidence" and upholds its order so long as it uses reasoned decision making. Texaco, Inc. v. FERC, 148 F.3d 1091, 1095 (D.C. Cir. 1999). The Commission's decision to award NEW the license is entitled to deference so long as the decision is supported by substantial evidence. See Bangor Hydro-Elec. Co. v. FERC, 78 F.3d 659, 663 (D.C. Cir. 1996).The court grants "considerable" deference to the Commission's interpretation of a statute it administers so long as its "interpretation is permissible." Oconto Falls, 41 F.3d at 674 (citations omitted).
 
 A. Jurisdiction
 
 6
 The Commission challenges the court's jurisdiction to review WDNR's petition because it petitioned for review of the Rehearing Order instead of the License Order. Under section 313(b) of the FPA:
 
 
 7
 Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States court of appeals ... by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified....
 
 
 8
 16 U.S.C. 825l(b). Section 313(b)'s plain language indicates that "the order of the Commission upon the application for rehearing" (rehearing order) which begins the sixty-day limitations period is different from the "order of the Commission" ("aggrieving" order) which the petitioner is to identify in its petition. Section 313(b) provides review of the "aggrieving" order but the rehearing order simply determines the accrual date of the sixty-day limitations period. It would make little sense to provide for relief from the "aggrieving" order but at the same time require the petitioner to specify the rehearing order in its petition.[4] Thus, in order to properly petition for review of a Commission order, section 313(b) requires a petitioner to identify the "aggrieving" order which in this case is the License Order. In its petition for review, however, WDNR specified only the Rehearing Order. See WDNR's Petition for Review 1 (Jan. 11, 1999). Federal Rule of Appellate Procedure 15(a) requires that a petition for review of an agency order must "specify the order or part thereof to be reviewed." See also Entravision Holdings LLC v. FCC, 2000 WL 2667, at *1 (D.C. Cir. Feb. 11, 2000); Martin v. FERC, 199 F.3d 1370, 1372 (D.C. Cir. 2000); City of Benton v. NRC, 136 F.3d 824, 826 (D.C. Cir. 1998). Nevertheless, "[a] mistaken or inexact specification of the order to be reviewed will not be fatal to the petition ... if the petitioner's intent to seek review of a specific order can be fairly inferred from the petition for review or from other contemporaneous filings, and the respondent is not misled by the mistake."Entravision, 2000 WL 2667, at *1 (citing Martin, 199 F.3d at 1371-73; Southwestern Bell Tel. Co. v. FCC, 180 F.3d 307, 313 (D.C. Cir. 1999)). Although WDNR identified the Rehearing Order in its petition for review, it described the order as "[t]he final FERC order ... granting subsequent license to N.E.W. Hydro, Inc., and denying the City of Oconto Falls' competing application." WDNR's Petition for Review at 1 (emphasis added). Furthermore, WDNR's brief identified the License Order in its certificate of rulings under review and addressed the License Order in its briefs. In light of WDNR's contemporaneous filings, we believe it intended to challenge the License Order notwithstanding its denomination of the Rehearing Order. The Commission can hardly claim prejudice or lack of notice from WDNR's petition for review and in fact acknowledged as much at oral argument. Accordingly, we have jurisdiction to consider WDNR's petition for review.
 
 B. WDNR's Petition
 
 9
 Section 10(j)(1) of the FPA requires the Commission to place a condition on a license "based on recommendations received pursuant to the Fish and Wildlife Coordination Act (16 U.S.C. 661 et seq.) from ... State fish and wildlife agencies." 6 U.S.C. 803(j)(1) (Supp. 1999). Section 10(j)(2) of the FPA further requires that:
 
 
 10
 Whenever the Commission believes that any recommendation referred to in paragraph (1) may be inconsistent with the purposes and requirements of this subchapter or other applicable law, the Commission and the agencies referred to in paragraph (1) shall attempt to resolve any such inconsistency, giving due weight to the recommendations, expertise, and statutory responsibilities of such agencies.
 
 
 11
 Id. 803(j)(2). We have held that section 10(j) "requires the Commission to afford significant deference to fish protection recommendations of state and federal fish and wildlife agencies." Granholm ex rel. Michigan Dep't of Natural Resources v. FERC, 180 F.3d 278, 280 (D.C. Cir. 1999). Nevertheless, the Commission "still is charged with determining the 'public interest,' i.e., balancing power and non-power values. Even where the fish and wildlife agencies make formal section 10(j) recommendations, those agencies have no veto power." United States Dep't of Interior v. FERC, 952 F.2d 538, 545 (D.C. Cir. 1992) (citation omitted). WDNR argues specifically that the Commission failed to support, as is required under section 10(j)(2), its determinations that: (1) a six per cent entrainment rate would likely occur; (2) less entrainment would occur at the powerhouse intake; (3) most of the fish leaving the reservoir were excess fish; and (4) small fish (comprising the majority of those entrained) have a higher natural mortality rate. We review to ensure the Commission's factual findings are supported by substantial evidence. See Texaco, 148 F.3d at 1095.
 
 
 12
 The Commission derived its assumptions from WDNR's studies of the fish populations of the Oconto Falls reservoir conducted in 1984 and 1989. See, e.g., License Order, 81 FERC at 62,014; Memorandum Regarding Oconto Falls 1989 Pond Survey (Feb. 28, 1990). The studies found that the reservoir had a diverse fish community structure and stability with healthy and abundant fish populations. See License Order, 81 FERC at 61,911. Moreover, pike and bass existed in large numbers and with better than average growth rates.See id. at 62,014. WDNR's studies also found that any difficulties experienced by the largemouth bass and spawning walleye populations resulted from a lack of appropriate habitat in the reservoir, not from entrainment. See Pond Survey at 2. While section 10(j)(2) requires the Commission to give WDNR's recommendations "due weight," WDNR's own studies belie its request. Furthermore, the Commission's determination that the entrainment and mortality rate was approximately six per cent is consistent with WDNR's studies and with the best available evidence of the potential range of fish entrainment mortality. See Electric Power Research Institute, Fish Entrainment and Turbine Mortality Review and Guidelines (1992). Moreover, WDNR produced no evidence to contradict the Commission's assumptions based, as noted, on WDNR's own studies. The Commission met its statutory duty under section 10(j) to give WDNR's recommendations "due weight" and its factual findings easily meet the substantial evidence standard.
 
 
 13
 Finally, WDNR argues that the Commission improperly failed to impose a barrier net requirement. According to WDNR, because the barrier net at a nearby project (Pine Project) cost only $50,000, the Commission erred in estimating the cost of a barrier net at the Oconto Falls Project at $540,000. The Commission, however, distinguished the Pine Project barrier net on several grounds: the Pine Project was located in a more sheltered area of the reservoir and in much shallower water; the type of net used at the Pine Project was unsuitable for the Oconto Falls Project; WEPCO's analysis projected $540,000 for a barrier net for the Oconto Falls Project; and the Commission concluded that a fish protection device at the Oconto Falls Project would not have a significant beneficial effect on fishery resources. The Commission gave WDNR's recommendation to construct a net barrier similar to the Pine Project's barrier "due weight" but adequately distinguished the Oconto Falls Project's needs based upon substantial evidence.
 
 C. The City's Petition
 
 14
 The City first contends that the Commission should have concluded that the City's ability to comply with a license was superior to NEW's ability under section 15(a)(2) of the FPA. Under section 15(a)(2), the Commission is required to
 
 
 15
 consider (and explain such consideration in writing) each of the following:
 
 
 16
 (A) The plans and abilities of the applicant to comply with (i) the articles and conditions of any license issued to it and (ii) other applicable provisions of this subchapter.
 
 
 17
 (B) The plans of the applicant to manage, operate and maintain the project safely.
 
 
 18
 (C) The plans and abilities of the applicant to operate and maintain the project in a manner most likely to provide efficient and reliable electric service.
 
 
 19
 (D) The need of the applicant over the short and long term for the electricity generated by the project or projects to serve its customers....
 
 
 20
 (E) The existing and planned transmission services of the applicant, taking into consideration system reliability, costs, and other applicable economic and technical factors.
 
 
 21
 (F) Whether the plans of the applicant will beachieved, to the greatest extent possible, in a cost effective manner.
 
 
 22
 (G) Such other factors as the Commission may deem relevant....
 
 
 23
 16 U.S.C. 808(a)(2). Applying these factors, the Commission determined that there were no environmental or economic differences between NEW's and the City's applications.
 
 
 24
 The City contends that its license application was superior to NEW's because of the City's relationship to local agencies; its increased cost effectiveness; its ability to finance the Oconto Falls Project at a lower interest rate; its technical experience in operating public water and sewer operations; and its closer headquarters.[5] The Commission, however, considered the City's arguments. It determined that: proximity was not significant because many licensees are headquartered far from their projects with no bad effect; the Congress intended that municipal preference not apply in relicensing proceedings; NEW had experience with hydro power projects which the City lacked, including operating the Oconto Falls Project since 1992; both applicants had emergency plans; and although the City's projected cost effectiveness was 8.4 per cent greater than NEW's, forecasts of economic benefits are considered comparable unless the difference is more than 20 per cent, see City of Augusta et al., 72 FERC p 61,114, at n.58 (1995). The Commission's determination that the City's application was "essentially equal" to NEW's is supported by substantial evidence.
 
 
 25
 Also unconvincing is the City's argument that the Commission erroneously applied a "first to file" tie-breaker to grant NEW the license. First, the City asserts that section 4.37(b) of the Commission's regulations, 18 C.F.R. 4.37(b), prohibits the Commission from using the "first to file" tie-breaker.[6] The Commission's interpretation of its regulations is entitled to substantial deference. See Associated Builders & Contractors, Inc. v. Herman, 166 F.3d 1248, 1254 (D.C. Cir. 1999).The City correctly notes that the Commission ruled, and this court affirmed, that an "orphan" proceeding is governed by section 15 of the FPA, see Oconto Falls, 141 F.3d at 674-75, and that section 4.37(b) is not applicable to a section 15 new license proceeding.[7] From there, however, the City argues that no provision of section 4.37(b) may be applied in any proceeding governed by section 15 of the FPA. But section 4.37(b) is inapplicable only to proceedings for a "new license under section 15 of the Federal Power Act." 18 C.F.R. 4.37 (emphasis added). Although an orphan proceeding is governed by section 15 of the FPA, it is not a new license proceeding under that section.
 
 
 26
 Next, the City argues that the "first to file" tie-breaker is an impermissible retroactive policy change. According to the City, the Commission is bound by its prior decision "to deny any applicant or class of applicants a preference" because "the purpose of Congress was to place all applicants in a relicensing on an equal footing." Order No. 513, FERC Stats. and Regs., p 30,854, at 31,443-445 (1989) (finding rules of preference inappropriate in subsequent license proceedings). Order No. 513, however, does not address orphaned projects and does not dispense with tie-breakers in all section 15 proceedings. As we earlier determined, "Congress never envisioned the problem of orphaned projects. The statute is simply silent on the subject...." Oconto Falls, 41 F.3d at 677. Similarly, Commission precedent is silent on orphaned projects. Its action here, therefore, does not constitute a retroactive policy change.
 
 
 27
 More plausible, but still unconvincing, the City argues that the "first to file" tie-breaker is unfairly prejudicial because the Commission's delay in granting the City's petition to obtain WEPCO's ICP prevented it from filing its application before NEW filed. The City's argument, however, assumes that it had the same right to WEPCO's ICP as did NEW. In fact the City's rights significantly differed from NEW's.When NEW's offer to buy the Oconto Falls Project fell through, WEPCO hired NEW to operate the project. NEW's access to WEPCO's ICP arose from its contractual relationship with WEPCO, a relationship which the City had every right to seek but failed to pursue. As the Commission recognized, "the City was free to bid on the project, when [WEPCO] solicited offers." License Order, 81 FERC at 61,984. The City will not be heard to complain now.
 
 
 28
 Not to be deterred, the City also attacks NEW's agency relationship with WEPCO, arguing that WEPCO improperly acted as a co-applicant in violation of 18 C.F.R. 16.25.While section 16.25 precludes a previous license holder such as WEPCO from filing a license application in response to the Commission's notice soliciting applications, it does not address "co-applicant" status.[8] The Commission appropriately determined that neither the FPA nor its own regulations prohibited WEPCO from conditionally selling the Oconto Falls Project to NEW, from hiring NEW as its operating agent or from initially refusing to provide the City with the ICP. While an agency relationship may provide some advantages in filing a license application, it does not constitute a coapplicant relationship in violation of section 16.25. See License Order, 81 FERC at 61,984.
 
 
 29
 For the foregoing reasons, we conclude that the Commission did not err in granting NEW a license to operate the Oconto Falls Project and, accordingly, both WDNR's and the City's petitions for review are
 
 
 30
 Denied.
 
 
 
 Notes:
 
 
 [1]
 An orphaned project is a facility "for which the licensee files a notice of intent to apply for a relicense but neither the licensee nor any other applicant files a timely relicense application." Oconto Falls v. FERC, 41 F.3d 671, 672 (D.C. Cir. 1994); see also 18 C.F.R. 16.25.
 
 
 [2]
 In issuing a preliminary permit or original license, "the Commission shall give preference to applications therefor by States and municipalities" so long as the competing applications are "equally well adapted ... to conserve and utilize in the public interest the water resources of the region." 16 U.S.C. 800(a).
 
 
 [3]
 Section 15, as amended, "makes the municipal preference inapplicable in relicensing proceedings even when the licensee is not seeking to renew the license." Oconto Falls, 41 F.3d at 675.Instead, the license is issued to "the applicant having the final proposal which the Commission determines is best adapted to serve the public interest." 18 U.S.C. 808(a)(2) (Supp. 1999).
 
 
 [4]
 Section 313(b) of the FPA also requires a party to petition for rehearing before it seeks judicial review. WDNR argues that to interpret section 313(b) to require a party to petition for review of the "aggrieving" order effectively makes the required rehearing order nonreviewable. This court has previously determined that a rehearing order does not constitute a new order unless it significantly modifies the original order. See Southern Natural Gas Co. v. FERC, 877 F.2d 1066, 1072-73 (D.C. Cir. 1989). Although a rehearing order can be challenged together with an "aggrieving" order, as was the case in Southern Natural, a rehearing order cannot be challenged on its own unless it is a separate order and rehearing has been held pursuant to that order. See 16 U.S.C. 825l.
 
 
 [5]
 The Commission responds that the City waived its arguments regarding cost effectiveness, inclusion of campground costs and lower financing rate because the City failed to preserve them on rehearing. Although the City did not make these specific cost effectiveness challenges, it did challenge the Commission's determination of the two applicants' relative cost effectiveness. See City's Rehearing Request 4-8. In making the cost effectiveness argument, the City preserved its specific arguments related to that challenge. See City of Vernon v. FERC, 845 F.2d 1042, 1047 (D.C. Cir. 1988). In addition, not until its Rehearing Order did the Commission weigh the City's increased recreation costs while allegedly failing to consider the City's lower financing costs. Therefore, the City had no opportunity to raise these points before its petition for judicial review.
 
 
 [6]
 18 C.F.R. 4.37(b) provides:
 If two or more applications for ... licenses (not including applications for a new license under section 15 of the Federal Power Act) are filed ... the Commission will select between or among the applicants on the following bases:
 ....
 (b) If both of two applicants are either a municipality or a state, or neither of them is a municipality or a state, and the plans of the applicants are equally well adapted to develop, conserve, and utilize in the public interest the water re-sources of the region, taking into consideration the ability of each applicant to carry out its plans, the Commission will favor the applicant with the earliest application acceptance date.
 The Commission has held that section 4.37(b) applies where, as here, one applicant is a non-municipality and the other applicant is a municipality ineligible for the section 7(a) municipal preference. See Idaho Water Resource Bd., 84 FERC p 61,146, at n.14 (1998).
 
 
 [7]
 18 C.F.R. 4.37 is inapplicable to "new license [applications] under section 15 of the Federal Power Act."
 
 
 [8]
 When a project becomes orphaned, the Commission is required to publish a notice "soliciting applications from potential applicants other than the existing licensee." 18 C.F.R. 16.25.