# United States Court of Appeals
## For the First Circuit

Nos. 01-1848
     01-2147

LONDONDERRY NEIGHBORHOOD COALITION,

Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF THE

FEDERAL ENERGY REGULATORY COMMISSION

Before

Boudin, <u>Chief Judge</u>,

Torruella, <u>Circuit Judge</u>,

and Stahl, <u>Senior Circuit Judge</u>.

<u>Evan Slavitt</u>, with whom <u>Gadsby Hannah, LLP</u>, on brief for petitioner.
<u>Larry D. Gasteiger</u>, with whom <u>Judith A. Albert</u>, <u>Cynthia A. Marlette</u>, Acting General Counsel, and <u>Dennis Lane</u>, Solicitor, were on brief, for the Federal Energy Regulatory Commission.
<u>Jay V. Allen</u> for intervenor Tennessee Gas Pipeline Company.

December 10, 2001

**TORRUELLA, Circuit Judge.** Petitioner Londonderry Neighborhood Coalition ("LNC") seeks review of a decision by the Federal Energy Regulation Commission ("FERC" or "the Commission") to certify a natural gas pipeline-replacement project. LNC argues that the Commission's certification of the project was tainted by its failure to assess adequately the full environmental impact of the proposed undertaking. The Commission disputes the substance of LNC's arguments and, in addition, interposes a challenge to this Court's jurisdiction over the appeal. We find the Commission's jurisdictional argument sound and dismiss the petition for review.

## I.

## A.

Under the Natural Gas Act ("NGA"), 15 U.S.C. §§ 717-717z, the Commission has certificate authority over companies that engage in the transportation or sale for resale of natural gas in interstate commerce. To assure the orderly development of natural gas supplies, NGA § 7(c)(1)(A) prohibits any "natural-gas company or person" from constructing or operating pipeline facilities prior to obtaining a certificate of public convenience and necessity from the Commission. Id. § 717f(c)(1)(A). In accordance with NGA § 7(e), the Commission shall issue such certificates to qualified applicants once it determines that the proposed service "is or will be required by the present or future public convenience or necessity. . . ." Id. §

717f(e). The Commission is also authorized to attach to certificates "such reasonable terms and conditions as the public convenience and necessity may require." Id.

The Commission has no jurisdiction over facilities used strictly for the local distribution of natural gas. Id. § 717(b). Likewise, as dictated by the Federal Power Act ("FPA"), 16 U.S.C. §§ 791a-828c, the Commission has no jurisdiction to regulate electric generation facilities. Id. § 824(b)(1).

The National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370f, provides that federal agencies must follow certain procedures designed to identify and evaluate the environmental effects of proposed agency actions. NEPA requires federal agencies to prepare a detailed Environmental Impact Statement ("EIS") for all "major Federal actions significantly affecting the quality of the human environment." Id. § 4332(2)(C). However, "an agency need not conduct a comprehensive EIS if an environmental assessment reveals that the proposed action would not have a significant effect on the environment." Wyoming Outdoor Council v. U.S. Forest Serv., 165 F.3d 43, 49 (D.C. Cir. 1999) (citing 40 C.F.R. §§ 1501.4, 1508.9).

**B.**

In this case, the Commission was called upon to authorize a natural gas pipeline-replacement project proposed by the Tennessee Gas Pipeline Company ("Tennessee"). The project encompassed the

-4-

replacement of 19.3 miles of existing eight-inch-diameter pipe with twenty-inch pipe, enabling the delivery of natural gas from Massachusetts to a natural-gas-fired power generation plant being constructed in Londonderry, New Hampshire by a separate private entity, the AES Londonderry, LLC ("AES"). Tennessee's gas pipeline will be connected to the generation plant by a 2.9 mile, sixteen-inch distribution lateral to be built by EnergyNorth Natural Gas, Inc. ("EnergyNorth"). Both the AES power plant project and the EnergyNorth lateral project fall outside the jurisdiction of FERC and are, instead, subject to authorization by the state. See 16 U.S.C. § 824(b)(1); 15 U.S.C. § 717(b).

In July 1998, AES applied to the appropriate state body, the New Hampshire Energy Facility Site Evaluation Committee (EFSEC), for approval to construct and operate the power plant. In addition to the request specifically dealing with the power plant, the proposal also sought approval for three related subsidiary projects -- including the EnergyNorth project -- which were necessary for the power plant's operation. On May 25, 1999, after a comprehensive review process, EFSEC certified the projects, finding that the facility would not have an unreasonable adverse effect on the environment or public health. In August 2000, the New Hampshire Supreme Court upheld this certification in the face of a challenge by LNC. Appeal of the Londonderry Neighborhood Coalition, 761 A.2d 426 (N.H. 2000).

Meanwhile, AES signed a twenty-year contract with Tennessee for provision of the needed supply of natural gas. Tennessee already had in place, as part of its "Concord lateral" system, two parallel pipelines -- an eight-inch line and a twelve-inch line -- set ten feet apart in a combined fifty-foot right-of-way running from Dracut, Massachusetts into New Hampshire. To service the power plant, Tennessee proposed to remove the eight-inch line and replace it with a twenty-inch line.

## C.

On December 10, 1999, as required by the NGA, Tennessee applied to FERC for a certificate of public convenience and necessity to implement the project of replacing the existing pipeline in the Concord lateral system with a larger one. Tennessee's application was subsequently amended on January 24, 2000. On March 31, 2000, the Commission issued a "Notice of Intent to Prepare an Environmental Assessment" for the pipeline-replacement project and requested public comments regarding environmental issues. In that Notice, the Commission made a preliminary decision not to address the impact of the non-jurisdictional AES and EnergyNorth projects, noting that they had been approved by the state and had received all the necessary federal permits. After receiving comments from LNC (a nonprofit organization comprised of over 100 local citizens) and the United States Fish and Wildlife Service arguing that, under NEPA, the Commission was required

to consider the cumulative environmental impact of all three projects, the Commission issued a 57-page Environmental Assessment on August 11, 2000. Despite the objections of LNC and the Fish and Wildlife Service, the Assessment did not address the environmental impact of the AES or EnergyNorth projects.

On October 27, 2000, after receiving further comments from LNC and other entities, the Commission issued an order authorizing the Tennessee pipeline project, subject to certain conditions (the "October 27, 2000 Order"). In that order, the Commission relied on the Environmental Assessment and again held that it was unnecessary to consider the two non-jurisdictional facilities in its review. The Commission further found that the pipeline replacement would have no significant environmental impact and ruled that an EIS was therefore unnecessary.

Following the October 27, 2000 Order, the Town and School District of Londonderry filed a timely motion for rehearing on November 24, 2000. See 15 U.S.C. § 717r(a) (providing that motion for rehearing must be filed within thirty days of the issuance of the order). LNC also submitted a motion for rehearing, though it was received and filed one day late on November 28, 2000. On November 29, 2000, LNC moved for an extension of time to file its request for rehearing, explaining that the untimeliness of its motion for rehearing was due to an error by the U.S. Postal Service. According to LNC, the original rehearing motion

-7-

was sent via Express Mail Service, which guarantees overnight delivery. In a supplemental motion filed on December 6, 2000, LNC asked, in the alternative, that its motion for rehearing be deemed a motion for reconsideration.

On December 12, 2000, the Commission issued an Order Granting Rehearing for Further Consideration. Since this order states that "rehearing has been timely requested," it presumably referred only to the Town and School District's motion for rehearing. On May 3, 2001, the Commission issued an Order Granting, in Part, and Denying, in Part, Rehearing and Request for Reconsideration (the "May 3, 2001 Order"). The May 3, 2001 Order denied LNC's motion for an extension, holding that the Commission had no authority to excuse LNC's untimely motion for rehearing, but agreed to treat that motion as a motion for reconsideration. The Order then partially granted that motion (and the Town's rehearing request) with respect to one narrow issue.[1] The May 3, 2001 Order otherwise denied both motions, including LNC's NEPA-based challenges regarding the AES and EnergyNorth projects. On May 14, 2001, the Commission authorized construction of the Tennessee pipeline project.

---

[1] Specifically, the Commission revisited and modified its October 27, 2000 Order by requiring Tennessee to reroute less than one-half mile of its new pipeline farther away from a school property in accordance with an earlier proposal discussed in the Environmental Assessment.

On June 1, 2001, LNC filed with the Commission a request for rehearing of the May 3, 2001 Order and, on June 4, 2001, requested a stay of the May 3, 2001 and May 14, 2001 Orders. After Tennessee announced on June 11, 2001 that construction on the pipeline project had begun one week earlier, LNC, without waiting for rulings on its requests for rehearing and a stay, filed with this Court a petition for review of the May 3, 2001 and May 14, 2001 Orders. On June 13, 2001, the Commission dismissed the requests for rehearing and stay, stating: "Since the May 3 order does not alter the October 27 order's finding with respect to cumulative impacts, the Commission's decision on that issue is final and further rehearing does not lie for any party to the proceeding." Tennessee Gas Pipeline Co., 95 FERC ¶ 61,386 (2001).

In addition to filing its petition for review of the May 3, 2001 and May 14, 2001 Orders, LNC filed a motion with this Court to stay construction of the Tennessee pipeline. FERC and Tennessee both filed motions opposing the stay along with motions to dismiss. On July 31, 2001 we denied LNC's stay motion as well as the motions to dismiss. LNC then filed a second petition for review, this time requesting review of the Commission's June 13, 2001 Order in addition to the May 3, 2001 and May 14, 2001 Orders. LNC's first and second petitions for review were consolidated in this appeal.

**II.**

LNC asserts on appeal that the Tennessee pipeline project is sufficiently intertwined with the AES and EnergyNorth projects to mandate Commission review of the environmental effects of the latter two projects. Because the Commission limited its review to the Tennessee pipeline and ruled that it was unnecessary to consider the environmental effects of the AES and EnergyNorth projects, LNC contends that the Commission violated various provisions of NEPA.

FERC disputes these contentions on their merits. In addition, FERC raises a threshold jurisdictional issue. According to the Commission, LNC's failure to file a timely motion for rehearing of the October 27, 2000 Order precludes this Court from entertaining the appeal.

**A.**

The NGA mandates that, as a predicate to filing an appeal from an order of the Commission, the affected party must move for rehearing within thirty days of the date on which the order was issued. Section 19(a) of the NGA provides:

> Any person . . . aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person . . . is a party may apply for a rehearing within thirty days after the issuance of such order . . . . No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon.

15 U.S.C. § 717r(a). "There is no question that under the Natural Gas Act 'an application for rehearing is a jurisdictional prerequisite to judicial review.'" Boston Gas Co. v. FERC, 575 F.2d 975, 977 (1st Cir. 1978) (quoting Public Serv. Comm'n of N.Y. v. Federal Power Comm'n, 543 F.2d 757, 775 n.116 (D.C. Cir. 1974)).

In this case, application of this potential jurisdictional bar will depend upon which order of the Commission triggered the requirements of NGA § 19(a). The Commission argues that the October 27, 2000 Order is the relevant order and that LNC's petition for rehearing was untimely. LNC, on the other hand, contends that the relevant order -- and therefore the only order from which it seeks appeal -- is the May 3, 2001 Order. LNC also contends that, in any event, its failure to adhere strictly to the statutory deadline may be excused on equitable grounds. We turn first to the task of determining which order is the relevant one for purposes of determining our jurisdiction.

**B.**

The Commission relies upon the plain language of NGA § 19 (a) in arguing that the relevant order is the one by which a protesting party is "aggrieved." Because the October 27, 2000 Order authorized the project and established the Commission's position that it would not consider the two non-jurisdictional projects for purposes of compliance with NEPA, the Commission submits that LNC was required to seek timely

-11-

rehearing from that order, or else forfeit its claims.  LNC offers a two-fold response.  First, it contends that the Commission's own regulation establishes that the rehearing requirement applies only to a "final decision" issued by the Commission, which in this case is arguably the May 3, 2001 disposition.  Second, LNC asserts that the May 3, 2001 Order modified the earlier decision to such an extent that it triggered a new window of opportunity in which LNC successfully sought rehearing.  We find both of LNC's contentions hollow and conclude that the October 27 Order triggered LNC's obligation to timely move for rehearing in order to preserve its appeal rights.[2]

LNC's first argument rates only brief attention.  The Commission's Rule 713 provides, in part: "A request for rehearing by a party must be filed not later than 30 days after issuance of any <u>final decision</u> or other final order in a proceeding."  18 C.F.R. § 385.713(b) (emphasis added).  Even if this rule can be read to support LNC's

---

[2] We note that our determination that LNC is aggrieved by the October 27, 2000 Order heaps another jurisdictional quandary on the pile. Under Fed. R. App. P. 15(a)(2)(C), a petition for review of an agency order must "specify the order or part thereof to be reviewed."  In its first and second petitions for review before this Court, LNC appealed only the May 3, 2001, May 14, 2001, and June 13, 2001 orders.  Because we ultimately conclude that we lack jurisdiction over this appeal based on LNC's failure to seek timely rehearing before the Commission, we need not address other possible jurisdictional defects.  Similarly, we note that our disposition here precludes us from resolving the issue of whether venue in this Court is proper.

position,[3] such a reading would be trumped by the plain language of NGA § 19(a).  That section, which we apply without reservation, clearly makes the "aggriev[ing]" order the relevant order for purposes of seeking rehearing and a subsequent appeal.

Next, LNC attempts to shore up its position by asserting that the Commission, in the May Order, revisited the central issue in this case: whether the Commission should have conducted a review of the AES and EnergyNorth projects.  According to LNC, this proves that the Commission was still in a "deliberative process" and the October 27, 2000 Order was not the final word on this issue.

To be sure, the existence of a rehearing procedure indicates that the Commission will continue its deliberative process after an initial order on a matter.  Nevertheless, the availability of rehearing does not alter the clear statutory procedure for perfecting an appeal. As the text of the statute illustrates, there is an important distinction between an aggrieving order and a rehearing order for purposes of the appeal process:

> Any party to a proceeding . . . aggrieved by an order issued by the Commission . . . may obtain a review of such order in the court of appeals . . . by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition

---

[3] The Commission's rule can also be read to apply only to  proceedings raised under subpart E of the regulations, which governs evidentiary hearings, thus making it entirely inapplicable to this case.  See 18 C.F.R. § 385.713(a)(2).

-13-

> praying that the order of the Commission be modified or set aside in whole or in part.

15 U.S.C. § 717r(b).  Thus, while a rehearing order triggers the sixty-day period for filing an appeal under this section, it is plainly the aggrieving order that must be appealed.  <u>City of Oconto Falls</u> v. <u>FERC</u>, 204 F.3d 1154, 1159 (D.C. Cir. 2000).[4]

There are, indeed, some cases in which the Commission will sufficiently modify an earlier order -- either upon rehearing, reconsideration, or acting sua sponte -- so as issue, in effect, a new aggrieving order that triggers a new rehearing requirement.  <u>See</u> <u>Southern Natural Gas Co.</u> v. <u>FERC</u>, 877 F.2d 1066, 1073 (D.C. Cir. 1989); <u>Tennessee Gas Pipeline Co.</u> v. <u>FERC</u>, 871 F.2d 1099, 1109-10 (D.C. Cir. 1989).  In certain cases it may be "a fine point to determine whether a subsequent modification amounts to a new order or is merely a technical change in an existing order."  <u>Tennessee Gas</u>, 871 F.2d at 1110.  However, we have little difficulty concluding in this case that the Commission's May 3, 2001 Order was a mere technical modification that did not amount to an order that aggrieved LNC anew.  The May 3, 2001 Order only rerouted one-half mile of pipeline; this change is virtually irrelevant to the larger NEPA issues appealed by LNC and,

---

[4]  In <u>City of Ocanto Falls</u>, the court was interpreting an identical provision of the Federal Power Act.  It is "established practice" to cite decisions interpreting cognate provisions of the two statutes interchangeably.  <u>Arkansas La. Gas Co.</u> v. <u>Hall</u>, 453 U.S. 571, 577 n.7 (1981).

-14-

moreover, is a modification that LNC actually requested. LNC certainly cannot claim to be "aggrieved" by such a modified order. See Southern Natural Gas, 877 F.2d at 1071 ("[H]aving received from FERC what it presented as its first choice . . ., [the petitioner] is not 'aggrieved,' in any sense contemplated by NGA § 19(b) . . . . ").

In sum, by granting partial reconsideration with respect to this discrete minor issue, the Commission did not open the door for appeal of any and all prior rulings, including those implicating LNC's forfeited NEPA claims.[5] See Tennessee Gas, 871 F.2d at 1110 n.18 ("[I]f a party does not raise an argument *that it could have raised* in its first petition for review of a Commission action, it cannot preserve that argument for judicial review simply by filing a second petition for rehearing from a subsequent Commission order which implicates the same action."); accord Kentucky Utils. Co. v. FERC, 789 F.2d 1210, 1215 (6th Cir. 1986). As the Ninth Circuit has held, the NGA precludes "the

---

[5] We find LNC's reliance on Cities of Campbell v. FERC, 770 F.2d 1180 (D.C. Cir. 1985), unpersuasive. In that case, the court held that it had jurisdiction over the appeal in spite of the petitioner's tardy motion for rehearing on an earlier order. The court acknowledged, however, that its ruling was limited to the peculiar circumstances of that case -- namely, that the Commission had effectively mooted the petitioner's untimely request for rehearing and deprived the earlier order of its finality by "staying the effectiveness of [the] order and by granting reconsideration of that entire order. . . ." Id. at 1184 (emphasis added). By contrast, in this case the Commission neither stayed the October 27, 2000 order pending further proceedings nor granted reconsideration of the issues LNC raises on appeal. The Commission merely revisited a minor issue that is unrelated to those raised here.

-15-

intertwining of orders for review purposes, that is, using a timely petition to review an order for which the time limitations have run." Covelo Indian Cmty. v. FERC, 895 F.2d 581, 585 (9th Cir. 1990).

Having satisfied ourselves that the October 27, 2000 Order is the relevant order for purposes of applying the review provisions of the NGA, we turn to LNC's argument that it should be excused from strict adherence to the review provisions of the NGA based on equitable considerations.

## c.

LNC contends that its appeal rights were still preserved because its motion for rehearing would have been timely filed but for an error by the postal service.[6] In other words, since there is a decent excuse for the petition's lack of timeliness, LNC argues, this Court should waive the time requirements of the NGA and consider the petition as timely. We decline to do so.

The Commission itself has consistently held that the thirty-day time limit "is a jurisdictional time limit which [the] Commission has no authority to extend." Turnbull & Zoch Drilling Co., 37 F.P.C. 255, 256 (1967). Several courts of appeals, including this one, have

---

[6] LNC also argues that its request for rehearing was made within thirty days of the October 27, 2000 Order's "issuance" because that order was not formally issued until October 31, 2000. Since LNC never made this argument before the Commission, it has forfeited that claim on appeal. A petitioner cannot raise an issue before the court that it did not first present before the Commission. See 15 U.S.C. § 717r(b); United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952).

voiced substantial agreement with this view.  See Boston Gas, 575 F.2d at 979 ("Neither the Commission nor the courts are given any form of jurisdictional discretion."); see also Tennessee Gas, 871 F.2d at 1107; United Gas Pipe Line Co. v. FERC, 824 F.2d 417, 434 (5th Cir. 1987); Sierra Ass'n for Env't v. FERC, 791 F.2d 1403, 1406 (9th Cir. 1986); Montana-Dakota Utils. Co. v. FERC, 739 F.2d 376, 380-81 (8th Cir. 1984).  LNC, on the other hand, proffers no concrete authority for its contrary position.  The best that LNC can do is point to language from one of our cases that offers little more than an oblique suggestion that a court of appeals might have the power to waive the rehearing deadline in the appropriate case.  See Boston Gas, 575 F.2d at 979 ("In the present case petitioner presents no meritorious excuse for its failure to file a timely application for rehearing.").

Though we are reluctant to say there are no circumstances -- no matter how extraordinary -- that would toll the rehearing deadline, the present case does not require us to navigate any such uncharted territory.  The postal service may bear much of the fault for having delivered the petition later than expected.  Nevertheless, delivery delays occur with some frequency, and there was no reason why LNC had to wait until the last minute to file its petition.  The October 27, 2000 Order clearly stated that it was issued on that date, and LNC was fully informed that its petition had to be received within thirty days of that date.  Furthermore, LNC could easily have called the Commission

-17-

to inquire as to whether its petition had been received.  Once it found the petition had not been received, LNC could have complied with the filing deadline by following up with a telegraph or some other form of electronic filing.  See id. at 979-80 (noting that FERC has accepted rehearing motions via telegraph).

Since we find that LNC failed to file a timely petition for rehearing with the Commission, we do not consider the merits of LNC's claims on appeal.

**Petition dismissed.**  Costs are assessed against the petitioners.